UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| **MERCHANTS BONDING COMPANY (MUTUAL),**<br>6700 Westown Parkway<br>West Des Moines, IA 50266<br><br>AND<br><br>**MERCHANTS NATIONAL BONDING, INC.,**<br>6700 Westown Parkway<br>West Des Moines, IA 50266<br><br>    Plaintiffs,<br><br>v.<br><br>**JEFFREY J. PECK, an individual**<br>618 Brennan Woods Drive<br>Williston, VT 05495<br><br>    Defendant. | **Civil Action No.: 2:24-cv-00845-cr** |

## COMPLAINT

Plaintiffs Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively "Merchants" or "Surety"), by and through their undersigned counsel, hereby state the following as their Complaint against Defendant Jeffrey J. Peck ("Defendant"):

### PARTIES AND JURISDICTION

1. Plaintiff Merchants Bonding Company (Mutual) is a corporation duly organized and existing under the laws of the State of Iowa with its principal place of business located in West Des Moines, Iowa.

2. Plaintiff Merchants National Bonding, Inc. is a corporation duly organized and existing under the laws of the State of Iowa with its principal place of business located in West Des Moines, Iowa.

3. Upon information and belief, Defendant Jeffrey J. Peck is a citizen of Vermont and resides at 618 Brennan Woods Drive, Williston, Vermont 05495.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because of the diversity of citizenship of the parties hereto, and because the amount in controversy exceeds $75,000.00.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as the Defendant resides in this judicial district and a substantial part of the events and omissions giving rise to the claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

6. The factual issues that give rise to this dispute concern losses incurred by Merchants as a result of several surety bonds that Merchants issued for and on behalf of entities managed by the Defendant, and for which such losses Defendant agreed to indemnify and reimburse Merchants.

7. iSun Industrial, LLC is a limited liability company duly organized and existing under the laws of the State of Delaware with a principal place of business in Williston, Vermont.

8. iSun, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business in Williston, Vermont.

9. Peck Electric Co. is a corporation duly organized and existing under the laws of the State of Vermont with a principal place of business in Williston, Vermont.

10. At all times relevant herein, Jeffrey J. Peck was the CEO of iSun Industrial, LLC and iSun, Inc., and the President of Peck Electric Co.

11. At all times relevant herein, iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. were in the business of, among other things, providing engineering, procurement, and construction services to commercial customers' solar industry solutions.

## THE INDEMNITY AGREEMENT, PROJECTS & BONDS

12. On February 3, 2023, in order to induce Merchants to issue surety bonds, Jeffrey J. Peck, iSun Industrial, LLC, and iSun, Inc. executed a General Agreement of Indemnity ("Indemnity Agreement"), binding themselves to be jointly and severally liable to Merchants in the event of any loss on any of the surety bonds issued by Merchants. A true and correct copy of the Indemnity Agreement is attached hereto and incorporated herein as Exhibit A.

13. On February 21, 2023, Peck Electric Co. executed an Amendment to the Indemnity Agreement, adding Peck Electric Co. as an additional, joint and several corporate indemnitor under the Indemnity Agreement. A true and correct copy of the Amendment to Indemnity Agreement is attached hereto as Exhibit A. Hereinafter, the General Agreement of Indemnity and the Amendment to Indemnity Agreement are collectively referred to as the "Indemnity Agreement."

14. The Indemnity Agreement provides:

SECOND: The [Indemnitors] shall unconditionally indemnify and keep indemnified the [Surety] against any and all liability, loss and expense of whatsoever kind or nature, including, but not limited to, court costs, attorneys' fees, and interest, which the [Surety] may sustain or incur (1) by reason of having executed or procured execution of any Bond or Bonds, (2) by reason of the failure of the [Indemnitors] to perform or comply with this Agreement, or (3) to enforce any of the covenants and conditions of this Agreement.

Exhibit A, pp. 1-2.

15. The Indemnity Agreement further provides:

The [Indemnitors] agree to furnish money to the Contractor or to the [Surety] as needed for the prompt payment of labor and materials used in performance of contracts guaranteed by a Bond when and as requested to do so by the [Surety].

Exhibit A, p. 2.

16. The Indemnity Agreement further provides:

The [Surety] shall have the exclusive right for itself and for the [Indemnitors] to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and the [Surety's] determination shall be final, conclusive and binding upon the [Indemnitors].

3

Id.

17. The Indemnity Agreement further provides:

> Vouchers, affidavits or other evidence of payment by the [Surety] of any loss, cost or expense shall be prima facie evidence of their propriety and the liability of the [Indemnitors] to the [Surety] for such loss, cost or expense. In the event of any payment by the [Surety], the [Indemnitors] agree that in any accounting between the [Surety] and the [Indemnitors], the [Surety] shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed.

Id.

18. The Indemnity Agreement further provides:

> TENTH: The [Indemnitors] hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by the [Surety] under the law of the United States or of any state or province or of any other government. The [Indemnitors] hereby waive trial by jury in any action or proceeding pertaining to this Agreement. This waiver is knowingly, willingly and voluntarily made by the [Indemnitors], and the [Indemnitors] represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

Exhibit A, p. 4.

19. The Indemnity Agreement further provides:

> FOURTEENTH: Immediately upon demand, the [Indemnitors] will deposit with the [Surety], as collateral security, money or other collateral satisfactory to the [Surety], equal to (1) the liability of the [Surety], if established; (2) the liability asserted against the [Surety]; or (3) the reserve established by the [Surety], or any increase thereof, to cover any liability for any loss or expense for which the [Indemnitors] may be obligated to indemnify the [Surety] under the terms of this Agreement … The [Surety's] demand shall be sufficient if sent by regular first class, registered or certified mail, by facsimile transmission, electronic mail or digital transmission, or by personal service to the [Indemnitors], regardless of whether actually received.

Exhibit A, pp. 4-5.

20. As a direct and proximate result of Jeffrey J. Peck, iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. (collectively, the "Indemnitors") executing the Indemnity Agreement, and

in reliance thereon, Merchants, as surety, issued the following Payment and Performance Bonds (the "Bonds"):

> The Larson Performance Bond
> Performance Bond No. NME 1133
> Surety: Merchants National Bonding, Inc.
> Principal: iSun Industrial, LLC
> Obligee: BD Solar Larson, LLC c/o BNRG Maine LLC
> Project: BD Solar Larson LLC Design-Solar PV System Engineer, Procure & Install
> Penal Sum: $6,379,144.00
> Date: February 7, 2023
>
> The Larson Payment Bond
> Payment Bond No. NME 1133
> Surety: Merchants National Bonding, Inc.
> Principal: iSun Industrial, LLC
> Obligee: BD Solar Larson, LLC c/o BNRG Maine LLC
> Project: BD Solar Larson LLC Design-Solar PV System Engineer, Procure & Install
> Penal Sum: $6,379,144.00
> Date: February 7, 2023
>
> The Halladay Performance Bond
> Performance Bond No. NVT 1018
> Surety: Merchants National Bonding, Inc.
> Principal: iSun Industrial, LLC
> Obligee: Halladay Solar, LLC c/o Standard Solar, Inc.
> Project: MHG Middlebury Halladay–Solar PV System Engineer, Procure and Install
> Penal Sum: $3,436,864.30
> Date: February 7, 2023
>
> The Halladay Payment Bond
> Payment Bond No. NVT 1018
> Surety: Merchants National Bonding, Inc.
> Principal: iSun Industrial, LLC
> Obligee: Halladay Solar, LLC c/o Standard Solar, Inc.
> Project: MHG Middlebury Halladay–Solar PV System Engineer, Procure and Install
> Penal Sum: $3,436,864.30
> Date: February 7, 2023
>
> The Norridgewock Performance Bond
> Performance Bond No. NME 1132
> Surety: Merchants National Bonding, Inc.
> Principal: iSun Industrial, LLC
> Obligee: BD Solar Norridgewock, LLC c/o BNRG Maine LLC
> Project: BD Solar Norridgewock, LLC Design–Solar PV System Engineer, Procure & Install

Penal Sum: $2,852,165.00
Date: February 7, 2023

The Norridgewock Payment Bond
Payment Bond No. NME 1132
Surety: Merchants National Bonding, Inc.
Principal: iSun Industrial, LLC
Obligee: BD Solar Norridgewock, LLC c/o BNRG Maine LLC
Project: BD Solar Norridgewock, LLC Design–Solar PV System Engineer, Procure & Install
Penal Sum: $2,852,165.00
Date: February 7, 2023

The Neagley and Chase Performance Bond
Subcontract Performance Bond No.: 100000127
Surety: Merchants National Bonding, Inc.
Principal: Peck Electric Co.
Obligee: Neagley and Chase Construction Company
Project: Electrical – ICE Law Enforcement Facility – Project No. 1587
Penal Sum: $1,391,028.00
Date: February 22, 2023

The Neagley and Chase Payment Bond
Subcontract Labor and Material Payment Bond No.: 100000127
Surety: Merchants National Bonding, Inc.
Principal: Peck Electric Co.
Obligee: Neagley and Chase Construction Company
Project: Electrical – ICE Law Enforcement Facility – Project No. 1587
Penal Sum: $1,391,028.00
Date: February 22, 2023

True and correct copies of the Bonds are attached hereto as Exhibit B.

## THE PRINCIPALS' DEFAULTS, BOND CLAIMS & SURETY LOSSES

21. On May 24, 2024, BD Solar Larson, LLC c/o BNRG Maine LLC terminated iSun Industrial, LLC for default. BD Solar Larson, LLC c/o BNRG Maine LLC made demand on the Performance Bond on May 31, 2024.

22. On May 20, 2024, Halladay Solar, LLC c/o Standard Solar, Inc. terminated iSun Industrial, LLC for convenience.

23. On May 24, 2024, BD Solar Norridgewock, LLC c/o BNRG Maine, LLC terminated iSun Industrial, LLC for default.

24. The Surety established a loss reserve (the "Reserve") in the amount of $3,200,000.00.

25. As of July 15, 2024, the Surety has received, investigated, and paid the following claims (the "Bond Losses") on Payment Bond No. NME 1133 (the "Larson Payment Bond") out of the Reserve:

| CLAIMANT | LOSSES PAID |
|---|---|
| Larkin Enterprises | $1,004,419.50 |
| Haley Ward, Inc. | $1,500.00 |
| Williams Scotsman, Inc. | $3,470.60 |
| Sun-Pull Wire LLC | $159,188.00 |
| Zane Construction LLC | $89,120.18 |
| Scott R. Secrest, PE | $10,512.50 |
| PROLineUtility Construction | $93,317.37 |
| Milliken Brothers, Inc. | $788,149.10 |
| JCL Energy | $86,894.50 |
| QT Corporation | $22,297.00 |
| Dirigo Surveying | $74,000.00 |
| Also Energy Inc. | $35,934.00 |
| Camp Precast Concrete | $11,050.00 |
| Bancroft Contracting | $5,612.50 |
| Pine Tree Waste, a Casella Co. | $1,992.06 |
| Pine Tree Waste, Inc. | $940.00 |
| Sevee & Maher Engineers, Inc. | $3,876.56 |
| The Cote Corporation | $1,600.00 |
| Straightline Fencing | $69,703.76 |
| Portside Systems, LLC | $61,835.80 |
| **Claims Paid as of 7/15/24** | **$2,525,413.43** |

26. As of July 15, 2024, the Surety has further incurred expenses directly resulting from the Bonds in the amount of $105,885.89 ("Expense Losses").

27. As of July 15, 2024, the Surety has incurred total Bond Losses and Expense Losses in the amount of $2,631,299.32.

28. The Surety reasonably anticipates receiving additional claims against the Bonds, resulting in further Bond Losses and Expense Losses, and requiring an increase in the Reserve.

29. At present, there is $674,586.57 remaining in the Reserve.

### THE SURETY'S COLLATERAL DEMAND TO THE INDEMNITORS

30. As expressly authorized by the Indemnity Agreement, and as a direct result of receiving claims and incurring losses on the Bonds, Merchants issued a collateral demand to the Indemnitors on May 28, 2024 ("Collateral Demand"). A true and correct copy of the Collateral Demand is attached hereto as Exhibit C.

31. Pursuant to the express terms of the Indemnity Agreement, and as detailed in the Collateral Demand, the Indemnitors were obligated to immediately: (1) reimburse Merchants for its losses and expenses incurred as of that date in the amount of $2,560,139.65; and (2) deposit collateral security with Merchants in the amount of $682,974.07.

32. The Indemnitors failed to deposit collateral security with Merchants and provided no substantive response to Merchants' Collateral Demand in material breach of the Indemnity Agreement.

### THE CORPORATE INDEMNITORS' BANKRUPTCY FILINGS

33. On June 3, 2024, iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

34. In light of the automatic stay imposed by 11 U.S.C. § 362, iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. are not presently defendants in this proceeding to enforce the Indemnity Agreement. Merchants reserves the right to amend this Complaint to assert claims

against iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. in the event the automatic stay is lifted or is no longer applicable.

35. The Indemnity Agreement expressly provides that the Indemnitors are jointly and severally liable to the Surety, and that "[s]eparate suits may be brought hereunder against any or all of the [Indemnitors] as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action." Exhibit A, p. 4.

36. The Surety continues to be exposed to further losses and expenses arising from the Bonds including, without limitation, ongoing attorneys' fees, consultants' fees, and expenses incurred in enforcing the Surety's rights through this action.

37. The Surety is entitled to recover from the Defendant the full amount of its losses and expenses including, without limitation, those losses and expenses not yet incurred.

38. The Surety has complied with all conditions precedent to commencing this action.

## COUNT I
## DECLARATORY RELIEF – 28 U.S.C. § 2201

39. Paragraphs 1 through 38 above are incorporated by reference as if fully set forth herein.

40. An actual controversy exists between Merchants and Jeffrey J. Peck as to his liability to the Surety arising from the Indemnity Agreement.

41. The Surety is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Jeffrey J. Peck is obligated to immediately: (1) reimburse the Surety in the full amounts of its losses and expenses, including attorneys' fees and consultants' fees, incurred as a result of having issued the Bonds; and (2) deposit collateral security with the Surety in an amount sufficient to indemnify the Surety for all losses and expenses, including attorneys' fees and consultants' fees, that the Surety may incur as a result of having issued the Bonds.

## COUNT II
## CONTRACTUAL INDEMNITY – LOSSES AND EXPENSES

42. Paragraphs 1 through 41 above are incorporated by reference as if fully set forth herein.

43. The Indemnity Agreement obligates the Defendant to unconditionally indemnify, and keep indemnified, the Surety against any and all liability, loss, and expense which the Surety may incur as a result of having issued the Bonds.

44. As a result of the Surety's issuance of the Bonds, at the request of the Defendant, the Surety incurred losses and expenses through July 15, 2024, in the amount of $2,631,299.32, exclusive of accruing interest.

45. The Surety is presently incurring further losses and expenses arising from the Bonds, including those incurred as a result of enforcing the Indemnity Agreement through this action.

46. The Defendant has failed to indemnify the Surety in material breach of the Indemnity Agreement.

47. The Defendant is liable to the Surety for all losses and expenses, including those losses and expenses incurred in prosecuting this action, all in accordance with the specific terms and conditions of the Indemnity Agreement.

## COUNT III
## CONTRACTUAL INDEMNITY – COLLATERAL

48. Paragraphs 1 through 47 above are incorporated by reference as if fully set forth herein.

49. Pursuant to the Indemnity Agreement, the Defendant agreed, upon demand, to deposit with the Surety collateral security equal to: (1) the Surety's liability if established; (2) the

liability asserted against the Surety; or (3) the reserve established by the Surety, or any increase thereof, to cover any liability for any loss or expense for which the Indemnitors may be obligated to indemnify the Surety under the terms of the Indemnity Agreement.

50. On May 28, 2024, the Surety issued written demand on the Defendant to deposit collateral security pursuant to Paragraph 14 of the Indemnity Agreement. Exhibit C.

51. The Defendant failed to deposit collateral security in material breach of the Indemnity Agreement.

## COUNT IV
## SPECIFIC PERFORMANCE – COLLATERAL

52. Paragraphs 1 through 51 above are incorporated by reference as if fully set forth herein.

53. The Indemnity Agreement requires the Defendant to deposit collateral security immediately upon demand to enable the Surety to pay or settle the liabilities, losses, and expenses incurred by reason of having issued the Bonds.

54. Specific performance is warranted as an award of damages is inadequate because Merchants is, and will remain, exposed to significant losses and expenses arising from the Bonds, and that exposure is not yet liquidated.

55. The Defendant expressly agreed to deposit collateral security with Merchants immediately upon demand and has failed to do so in material breach of the Indemnity Agreement.

56. Merchants will suffer irreparable harm if the Defendant is not immediately ordered to deposit collateral security.

## COUNT V
## COMMON LAW INDEMNITY

57. Paragraphs 1 through 56 above are incorporated by reference as if fully set forth herein.

58. Pursuant to the Surety's common law right of indemnity, the Defendant is obligated to indemnify Merchants for all losses and expenses incurred as a result of the Surety having issued the Bonds.

59. As a result of the Surety's issuance of the Bonds, at the request of the Defendant, Merchants incurred losses and expenses through July 15, 2024, in the amount of $2,631,299.32, exclusive of accruing interest.

60. The Surety is incurring further losses and expenses arising from the Bonds, including those incurred as a result of enforcing the Indemnity Agreement through the above-captioned action.

61. The Defendant is liable to the Surety under common law for all losses and expenses, including those losses and expenses incurred in prosecuting this action.

## COUNT VI
## QUIA TIMET / EXONERATION

62. Paragraphs 1 through 61 above are incorporated by reference as if fully set forth herein.

63. By reason of having issued the Bonds, at the request of the Defendant, the Surety, if so adjudged, may be compelled to pay and satisfy further claims.

64. Merchants, as Surety, possesses the equitable rights of *quia timet* and exoneration to demand that the Defendant adequately secure or collateralize the Surety prior to it making any further payments under the Bonds.

65. The Surety's loss of its equitable rights of *quia timet* and exoneration would constitute irreparable harm for which there is no adequate remedy at law.

## COUNT VII
## INJUNCTIVE RELIEF

66. Paragraphs 1 through 65 above are incorporated by reference as if fully set forth herein.

67. Merchants, pursuant to the Indemnity Agreement and its contractual rights set forth therein, sent Indemnitors a Collateral Demand, which was substantively ignored.

68. Mr. Peck's financial exposure concerns Merchants. Mr. Peck has signed the voluntary Chapter 11 bankruptcy petitions for twelve (12) entities, all of which filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware on June 3, 2024.

69. Mr. Peck is the individual indemnitor for each of the Bonds that Merchants issued, as related to the above-captioned litigation, the value of which total $14,059.201.30.

70. Upon information and belief, Mr. Peck is also an individual indemnitor for nine (9) other bonds issued by Great Midwest Insurance Company, for the benefit of iSun Industrial, LLC and Peck Electric Co., the value of which total $25,830,346.88.

71. Mr. Peck's ability to quickly transfer his own interest in real property also concerns Merchants, as was already done on May 10, 2024. *See* the Quitclaim Deed, attached hereto as Exhibit D.

72. Mr. Peck and his wife, Krista Peck, as Trustees of the Jeffrey J. Peck revocable Trust, jointly owned his second home in Florida located at 9685 Bozzano Drive, Delray Beach, FL 33446 (the "Florida Property"). On May 10, 2024, the Florida Property was transferred to the Krista A. Peck Revocable Trust. *See* Exhibit D. This Quitclaim Deed thereby moved his second

home in Florida out of Mr. Peck's revocable trust and into the hands of Mrs. Peck's trust, in consideration of only ten dollars ($10.00).

73. This transfer was made just eighteen (18) days before Merchants issued its Collateral Demand, and less than one (1) month before the iSun entities filed for bankruptcy.

74. Merchants seeks an injunction from the Court to order Mr. Peck to comply with the Collateral Demand and deposit collateral security with the Surety in an amount sufficient to indemnify the Surety for all losses and expenses, including attorneys' fees and consultants' fees, the Surety may incur as a result of having issued the Bonds.

75. Without an injunction, Merchants will suffer irreparable harm as there is a reasonable likelihood that Defendant will destroy and/or deplete his assets by the time this litigation is resolved, leaving insufficient assets to satisfy a judgment in favor of Merchants.

76. Merchants has a substantial likelihood of success on the merits of the claims contained herein.

77. Without an injunction, the harm that will befall Merchants heavily outweighs any such harm that will result from Defendant being enjoined by this Court.

78. Public policy favors the enforcement of the Indemnity Agreement and Defendant's compliance therewith.

79. Plaintiff has no adequate remedy at law or otherwise for the harm or damage it will suffer as a result of Defendant destroying and/or depleting his assets.

### **REQUEST FOR RELIEF**

WHEREFORE, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. request that this Honorable Court enter judgment in their favor and against the Defendant, as follows:

1.      By issuing a declaration in favor of Merchants that Jeffrey J. Peck must immediately: (1) reimburse Merchants in the full amounts of its losses and expenses, including attorneys' fees and consultants' fees, incurred as a result of having issued the Bonds; and (2) deposit collateral security with the Surety in an amount sufficient to indemnify the Surety for all losses and expenses, including attorneys' fees and consultants' fees, the Surety may incur as a result of having issued the Bonds;

2.      By entering an order requiring the Defendant to immediately indemnify, and keep indemnified, the Surety against any and all liability, loss, and expense which the Surety incurs as a result of having issued the Bonds, including, without limitation, the Surety's attorneys' fees, consultants' fees, and expenses resulting from enforcement of its rights through this action, and all accruing interest;

3.      By entering an order that the Defendant specifically perform his obligation to immediately deposit collateral security in an amount sufficient to indemnify the Surety for all losses and expenses, including attorneys' fees and consultants' fees, the Surety may incur as a result of having issued the Bonds;

4.      By entering judgment against the Defendant for all Surety losses and expenses, incurred, and not yet incurred, including, without limitation, the Surety's attorneys' fees, consultants' fees, and expenses resulting from enforcement of its rights through this action, and all accruing interest;

5.      By issuing an injunction, requiring Jeffrey J. Peck to immediately comply with the Collateral Demand and deposit collateral security with the Surety in an amount sufficient to indemnify the Surety for all losses and expenses, including attorneys' fees and consultants' fees, the Surety may incur as a result of having issued the Bonds.

6. By granting Merchants such other and further relief as the Court deems just and proper.

**DATE**: August 2, 2024

Respectfully submitted,

**MERCHANTS BONDING COMPANY (MUTUAL) AND MERCHANTS NATIONAL BONDING, INC.**

By Counsel:

*/s/ Erin M. Heins, Esq.*
Erin M. Heins, Esq.
Lisa B. Shelkrot
**LANGROCK SPERRY & WOOL**
210 College Street, Suite 400
Burlington, Vermont 05402
Telephone: (802) 864.0217
Facsimile: (802) 864.0137
eheins@langrock.com
lshelkrot@langrock.com


*/s/ Lauren P. McLaughlin, Esq*.
Lauren P. McLaughlin, Esq.
Ashley P. Cullinan, Esq.
**SMITH, CURRIE OLES LLP**
1921 Gallows Road, Suite 850
Tysons, Virginia 22182
Telephone: (703) 506.1990
Facsimile: (703) 506.1140
lpmclaughlin@smithcurrie.com
apcullinan@smithcurrie.com