UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MERCHANTS BONDING COMPANY (MUTUAL) and MERCHANTS NATIONAL BONDING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFREY J. PECK, <br><br> Defendant. | Civil Action No.: 2:24-cv-00845-cr |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEFFERY PECK'S MOTION TO TRANSFER THIS ACTION TO THE DISTRICT OF DELAWARE**

1

**TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................................................. 1

    I.     This Lawsuit ............................................................................................................ 1

    II.    The Chapter 11 Bankruptcy Cases .......................................................................... 2

    III.   The Larson Project and Peck's Indemnification Claims and Defenses ................... 5

ARGUMENT .................................................................................................................................. 7

    I.     This Action Should be Transferred to the District of Delaware Pursuant to 28 U.S.C. § 1412 ........................................................................................................................ 7

         A.    This Action is "Related to" the Chapter 11 Cases ..................................... 8

         B.    Transfer of This Action to Delaware is Warranted in the "Interest of Justice" .... 10

         C.    Transfer of this Action to Delaware Also Promotes the Convenience of the Parties and Witnesses ............................................................................ 12

    II.    Alternatively, This Action Should Be Transferred to the District of Delaware Pursuant to 28 U.S.C. § 1404 .............................................................................................. 13

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abrams v. Gen. Nutrition Cos.*,
  No. 06-1820 (MLC), 2006 WL 2739642 (D.N.J. Sept. 25, 2006)............................................7

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995)...................................................................................................................8

*City of Liberal, Kan. v. Trailmobile Corp.*,
  316 B.R. 358 (D. Kan. 2004)....................................................................................................7

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)......................................................................................................8

*Dunlap v. Friedman's, Inc.*,
  331 B.R. 674 (S.D. W.Va. 2005)..............................................................................................7

*Gingras v. Rees*,
  5:15-cv-101, 2020 WL 134211138 (D. Vt. April 28, 2020).................................................7, 10

*GMAC Mortg., LLC v. Orcutt*,
  No. 5:12-cv-96, 2012 WL 6552914 (D. Vt. Dec. 13, 2012).....................................................8

*Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest
  Prods. Corp.)*,
  896 F.2d 1384 (2d Cir. 1990)....................................................................................................9

*In re Harwell*,
  381 B.R. 885 (D. Colo. 2008)...................................................................................................7

*Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Entm't Corp.*,
  532 B.R. 259 (E.D. Va. 2015)...................................................................................................7

*Lehman Bros Holdings Inc. v. 1st Advantage Mortgage, LLC (In re Lehman Bros.
  Holdings Inc.)*,
  594 B.R. 33 (Bankr. S.D.N.Y. 2018)......................................................................................12

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984)......................................................................................................8

**Statutes**

28 U.S.C. § 157............................................................................................................................6

28 U.S.C. § 1334(b) .....................................................................................................................7

28 U.S.C. § 1404(a) .................................................................................................1, 11, 12

28 U.S.C. § 1412................................................................................................... *passim*

67904/0001-48328872

Defendant Jeffrey Peck ("**Peck**" or "**Defendant**") respectfully submits this memorandum of law in support of his motion to transfer this action to the District of Delaware pursuant to 28 U.S.C. § 1412 or, alternatively, 28 U.S.C. § 1404.

## PRELIMINARY STATEMENT

1. Because Plaintiffs' claims against Peck in this action are inextricably intertwined with the Bankruptcy Court proceedings of Peck's co-indemnitors in the District of Delaware, and because Plaintiffs have agreed, by Order, to have their bankruptcy-related surety disputes heard by that Bankruptcy Court, the interest of justice overwhelmingly favors, and Peck respectfully requests, the transfer of this action for adjudication in the District of Delaware in conjunction with the related Bankruptcy Court proceedings.

## STATEMENT OF FACTS

**I.  This Lawsuit**

2. Merchants National Bonding (Mutual) and Merchants National Bonding, Inc. (together, "**Merchants**" or "**Plaintiff**") filed this lawsuit against Peck on August 2, 2024, about two months after the Chapter 11 Cases (defined below) were commenced. Merchants asserts claims against Peck as indemnitor of iSun, Inc., iSun Industrial, LLC ("**iSun Industrial**"), and Peck Electric Co. ("**Peck Electric**," and collectively, the "**Debtors**").

3. Merchants alleges that Peck was the CEO of iSun, Inc. and iSun Industrial, and President of Peck Electric, and that those companies "were in the business of, among other things, providing engineering, procurement, and construction services to commercial customers' solar industry solutions." (Complaint at ¶¶ 10-11). Merchants further alleges that it issued payment and performance bonds on certain of the Debtors' solar energy projects (*see id.* at ¶ 20), and that that Peck and the Debtors executed a General Agreement of Indemnity (the "**Indemnity**

1

Agreement"), pursuant to which they are jointly and severally liable to Merchants in event of any loss on any of those surety bonds. (*See id.* at ¶ 12).

4. Merchants alleges that on May 20 and 24, 2024, certain project owners, including, among others, BD Solar Larson, LLC c/o BNRG Main LLC ("**BNRG**"), the owner of the BD Solar Larson LLC Design project (the "**Larson Project**," and the surety bond issued in connection therewith, the "**Larson Bond**"), terminated iSun Industrial, and that Merchants established a loss reserve in the amount of $3.2 million (the "**Reserve**"). (*See id.* at ¶¶ 21-24). Further, Merchants asserts that, as of July 15, 2024, it "has received, investigated, and paid" claims aggregating $2,525,413.43 out of the Reserve in connection with the Larson Bond and incurred expenses in the amount of $105,885.89 (collectively, "**Bond Losses and Expenses**").

5. In this action, Merchants seeks, among other relief, to recover the Bond Losses and Expenses from Peck as the Debtors' indemnitor.

## II.  The Chapter 11 Bankruptcy Cases

6. On June 3, 2024 (the "**Petition Date**"), the Debtors and certain of their affiliates commenced chapter 11 cases (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which are being jointly administered under Case No. 24-11144 (TMH). The Debtors have been operating their businesses and managing their affairs in bankruptcy as debtors-in-possession pursuant to sections 1107(a) and 1108 of the title 11 of the United States Code (the "**Bankruptcy Code**").

7. As set forth in the declaration of Jeffrey Peck filed in support of the Chapter 11 Cases [Bankr. Docket No. 4] (the "**First Day Declaration**"),[1] the Debtors, together with their affiliates, comprised one of the largest solar energy services and infrastructure deployment

---

[1]   A copy of the First Day Declaration is attached as **Exhibit A**.

companies in the country. Due to events described in the First Day Declaration, prior to the Petition Date, the Debtors were on the precipice of shutting down, but were able to negotiate a series of "save the company" transactions supported by Clean Royalty, LLC ("**Clean Royalty**").

8. The Debtors commenced the Chapter 11 Cases to implement an auction sale of their business to Clean Royalties as a going concern, thereby preserving jobs, maximizing value for all their stakeholders, and avoiding the value-destructive alternative to a going concern sale. To that end, about one week after the Petition Date, the Debtors filed a motion [Bankr. Docket No. 65] (the "**Sale Motion**") in the Bankruptcy Court to approve, among other things, the proposed sale of substantially all their assets to Clean Royalty as stalking horse purchaser, as well as auction and bidding procedures and other related relief.

9. Since the Petition Date, Merchants has actively participated in the Chapter 11 Cases, as it seeks to enforce its claims against the Debtors. For example, among other filings, on June 5, 2024, Merchants filed a limited objection to the Debtors' motion to obtain post-petition financing [*see* Bankr. Docket No. 33] and on July 23, 2024, it filed a limited objection to the Debtors' proposed asset sale (and related assumption and assignment of contracts) to Clean Royalty. [*See* Bankr. Docket No. 262].[2] In those filings, Merchants has asserted, among other claims and arguments, that it has superior rights and/or interests in the Debtors' contract rights, funds, and receivables relative to defaulted bonded projects, including the Larson Project. It also has taken the position that such contract funds are trust funds, which do not belong to the Debtors.

10. Importantly, as discussed below, iSun Industrial has substantial claims against BNRG for damages in excess of Merchants' asserted Bond Losses and Expenses, which mitigates,

---

[2] Copies of the referenced limited objections (without exhibits) are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

and effectively eliminates, Merchants' asserted damages against Peck in this suit. The Debtors' claims in this regard were ostensibly sold to Clean Royalty subject to any competing claims and interests of Merchants.

11. Following completion of the Court-approved sale process and adjournments of the hearing to approve the sale to address certain parties' objections, including Merchants', on August 23, 2024, the Bankruptcy Court entered an Order [Bankr. Docket No. 393] (the "**Sale Order**")[3] approving the sale of substantially all of the Debtors' assets to Clean Royalties. To address Merchants' limited objections to the sale, the Debtors and Merchants agreed to certain language in the Sale Order, including, among other provisions, that:

> Notwithstanding anything to the contrary in this Order or the Stalking Horse Agreement, the Purchaser is not acquiring any "Cash", "Cash Collateral", "Cash Equivalents" or receivables that are not property of the Debtors' estate. For avoidance of doubt, nothing in this Order shall be deemed to (a) limit the Sureties' valid, enforceable, and non-avoidable subrogation rights, and/or the Sureties' rights as a beneficiary of any valid, enforceable, and non-avoidable trusts granted or created under the any indemnity agreements or at law ("Surety Rights"), if any;.... **In the event any disputes arise with respect to: (x) whether any receivables are property of the Debtors' estate(s), or (y) the nature, extent or applicability of the Surety Rights, or (z) whether any Acquired Assets are subject to Surety Rights but have a value in excess of the obligations owed to the Sureties related to such Surety Rights (for the avoidance of doubt, if there is such an excess it shall be included as part of the Acquired Assets), then the Sureties, Debtors, and Purchaser agree to use their commercially reasonable best efforts to resolve any such disputes.** *If the Sureties, Debtors, and/or Purchaser are unable to resolve any such dispute(s), the parties agree to submit such dispute(s) to this Court for resolution. The Court retains jurisdiction in connection with any such disputes*. . . .

(Sale Order at ¶ 50) (emphasis added). Thus, Merchants has submitted to the jurisdiction of the Bankruptcy Court and must resolve disputes concerning the Debtors and/or Purchaser (as more particularly described in the Sale Order) in the Bankruptcy Court.

---

[3] A copy of the Sale Order is attached hereto as **Exhibit D**.

4

12. Pursuant to the Sale Order, Merchants and Purchaser also are to account to each other for "any amounts collected, and the application of such amounts,… from the Debtors' current and former customers on all projects covered by the Bonds." (Sale Order at ¶¶ 51-52).

13. Having completed the sale phase of the Chapter 11 Cases, the Debtors are expected to file a chapter 11 plan of liquidation, which will, among other things, address the winddown of the Debtors' estates, including the treatment, distribution, and reconciliation of claims against their estates. On September 4, 2024, the Bankruptcy Court entered an Order [Bankr. Docket No. 434] (the "**Bar Date Order**") establishing October 17, 2024 (the "**Bar Date**"), as the general bar date for submitting proofs of claim against the Debtors' estates.[4]

### III. The Larson Project and Peck's Indemnification Claims and Defenses

14. The Larson Project is a 6.51 megawatt direct current community solar power facility located in Scarborough, Maine. BNRG engaged iSun Industrial to provide engineering, procurement and construction services for the Larson Project pursuant to a contract dated December 22, 2022 (the "**Larson Contract**").

15. iSun Industrial diligently and effectively discharged its obligations under the Larson Contract and timely reached mechanical completion of the Larson Project, though it was not without its challenges due to BNRG's multiple breaches of the Larson Contract, including, but not limited to, its failure to timely approve change orders and make payment when properly due and owing.

16. Significantly, BNRG refused, in bad faith, to acknowledge mechanical completion and was responsible, solely, for substantial delays throughout the course of the Larson Project. Rather than acknowledge mechanical completion, BNRG used the purported failure to achieve

---

[4] A copy of the Bar Date Order is attached hereto as **Exhibit E**.

67904/0001-48328872

mechanical completion not only as an excuse to hold up payment to iSun Industrial, but as a pretext to terminate the Larson Contract for cause – shortly before the filing of the Chapter 11 Cases, the intention of which it had clearly been advised. BNRG's termination of iSun Industrial was wrongful, in bad faith, and in breach of the Larson Contract.

17. iSun Industrial has substantial claims against BNRG in connection with its material breach and wrongful termination of the Larson Contract and related misconduct, including, but certainly not limited to, (a) unpaid amounts owed for work performed under the contract in an amount no less than approximately $1.5 million, and (b) "Contractor's Direct Costs" (as that term is define in the Larson Contract"), which includes all of Merchants' alleged Bond Losses and Expenses and more, plus additional margin to iSun Industrial. And, *even if* BNRG's termination of the Larson Contract for cause was deemed valid, iSun Industrial's claim for amount due under the Larson Contract may still exceed Merchants' alleged Bond Losses and Expenses. In summary, the amount BNRG owes to iSun Industrial is well in excess of Merchants' alleged Bond Losses and Expenses, which mitigate any and all damages Merchants seeks to recover from Peck. Additionally, Merchants has failed to properly investigate and challenge BNRG's performance bond claim based on BNRG's improper termination of the Larson Contract.

18. While Peck denies any liability with respect to Merchants' claims against him, Peck also asserts indemnification claims against the Debtors for any and all losses, costs, and expenses he incurs in connection therewith. Pursuant to the Debtors' corporate governance documents, the Debtors are obligated to indemnify Peck with respect to any and all claims Merchants asserts against him in this lawsuit. For instance, section 9.1 of the bylaws of iSun, Inc. (the "**Bylaws**") provides, in pertinent part, that:

> [t]he Corporation *shall* indemnify any person who was or is made a party or is threatened to be made a party to any threatened, pending or completed action, suit

or proceeding . . . by reason of the fact that the person is or was a director or officers of the Corporation, or is or was serving at the request of the Corporation as director, officer, employee or agent of another corporation, . . . or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him[.]

(Bylaws at § 9.1) (emphasis added).

19. Similarly, the Third Amended and Restated Certification of Incorporation of iSun, Inc. (the "**COI**") states that "[t]he Corporation, to the full extent permitted by Section 145 of the DGCL, as amended from time to time, ***shall*** indemnify all officers and directors whom it may indemnify pursuant thereto[.]" (COI at clause Sixth (B)) (emphasis added).[5]

20. As indicated above, the Bar Date has only recently been scheduled. Peck will timely file and prosecute his claims against the Debtors.

## ARGUMENT

21. Defendant requests that this case be transferred in its entirety to the District of Delaware in the interests of justice and/or for the convenience of the parties, where it may be heard in conjunction with the related Chapter 11 Cases currently being administered by the Bankruptcy Court in that District.[6]

### I.  This Action Should be Transferred to the District of Delaware Pursuant to 28 U.S.C. § 1412

22. Section 1412 provides that "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[7]

---

[5] A copy of the Bylaws and COI are attached hereto as **Exhibit F** and **Exhibit G**, respectively.

[6] Because this action "relates to" the Chapter 11 Cases, upon transfer, referral of the proceeding from the United States District Court for the District of Delaware to the Bankruptcy Court is automatic pursuant to 28 U.S.C. § 157 and the District Court's *Amended Standing Order of Reference* dated Feb. 29, 2012.

[7] Courts have held that 28 U.S.C. § 1412 applies to the transfer of a civil action that falls within the Bankruptcy Court's "related to" jurisdiction, *i.e.*, a proceeding "related to" the bankruptcy case. *See, e.g., Hilton Worldwide, Inc.*

23. To establish that transfer of venue is appropriate pursuant to 28 U.S.C. § 1412, the movant must show (a) that the matter qualifies as a case or proceeding "under title 11" and, thus, within the jurisdictional purview of the Bankruptcy Court; and (b) that transfer is warranted "in the interest of justice" *or* "for the convenience of the parties." The latter test is disjunctive. Thus, only one or the other need be established.

### A. This Action is "Related to" the Chapter 11 Cases

24. As to the first inquiry under section 1412, there can be no question that Merchants' lawsuit against Peck is "related to" the Chapter 11 Cases and thus subject to the jurisdiction of the Bankruptcy Court.

25. Bankruptcy courts have jurisdiction over all civil proceedings "arising under title 11, or arising in or *related to* cases under title." 28 U.S.C. § 1334(b) (emphasis added). A bankruptcy court's "related to" subject matter jurisdiction is very broad. Under the uniformly accepted *Pacor* standard, the test for determining whether a civil proceeding is "related to" a bankruptcy case is:

> whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or

---

*Glob. Benefits Admin. Comm. v. Caesars Entm't Corp.*, 532 B.R. 259, 273 (E.D. Va. 2015) ("In summary, therefore, § 1412 allows district courts to transfer non-title 11 cases to a district court where a bankruptcy proceeding is underway if the result of that case might affect the administration of the bankruptcy estate."); *In re Harwell*, 381 B.R. 885, 891 n.4 (D. Colo. 2008) ("[T]his court agrees with the cases holding that transfer of venue of 'related to' adversary proceedings is controlled by 28 U.S.C. § 1412[.]"); *Abrams v. Gen. Nutrition Cos.*, No. 06-1820 (MLC), 2006 WL 2739642, at *8 (D.N.J. Sept. 25, 2006) ("Although Section 1412 speaks only of proceedings 'under' the Bankruptcy Code, it is also applicable for determining whether a proceeding 'related to' a bankruptcy case may be transferred."); *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 677, 680 (S.D. W. Va. 2005) (collecting cases; concluding that § 1412 is appropriate in "related-to" actions); *City of Liberal, Kan. v. Trailmobile Corp.*, 316 B.R. 358, 362 & n.2 (D. Kan. 2004) (collecting cases; concluding that transfer was appropriate under either statute, but opining that "[i]f the court were to resolve the matter, it would find that § 1412 controls"); *cf. Gingras v. Rees*, 5:15-cv-101, 2020 WL 134211138 at *7 (D. Vt. April 28, 2020) (noting the split of authority on the question, and given that the Second Circuit has not ruled on the issue, opting to consider venue transfer under both § 1412 and § 1404(a) without deciding which applies).

freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (internal citations omitted); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *GMAC Mortg., LLC v. Orcutt*, No. 5:12-cv-96, 2012 WL 6552914, at *6 (D. Vt. Dec. 13, 2012) ("The federal courts' 'related to' jurisdiction is broad and a claim is 'related to' a bankruptcy case if the 'outcome of that [claim] could conceivably have any effect on the estate being administered in bankruptcy.'") (alteration in original) (quoting *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012).

26. In addressing this standard, the Supreme Court has stated that proceedings "related to" the bankruptcy include "suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995) (holding related to jurisdiction existed over a suit by the beneficiary of a supersedeas bond purchased by the debtor against the bonding company).

27. This action falls within the Bankruptcy Court's "related to" jurisdiction for many reasons, including, among others, the following: **First**, Merchants' claims against Peck are identical to and co-extensive with its claims against the Debtors, who are co-indemnitors (*i.e.*, iSun, Inc. and Peck Electric) and/or the principal obligor (*i.e.*, iSun Industrial) of Merchants' surety bonds, including, most significantly here, the Larson Bond. Thus, any adjudication against Peck with respect to Merchants' claims is tantamount to an adjudication against the Debtors on the same claims and issues. **Second**, relatedly, and most evidently, Peck is seeking indemnification from the Debtors for any liability, losses and expenses he may incur in connection with Merchants' claims against him – that will have a direct effect on the Debtors' estates. **Third**, the Debtors, Clean Royalty (as purchaser), Merchants (presumably based on its alleged subrogation and trust "Surety Rights" asserted in the Chapter 11 Cases), and Peck have overlapping interests in the

9

significant claims against BNRG, the recovery of which would mitigate, in part or in full, any of Merchants' alleged claims against Peck and the Debtors. Merchants has already submitted to the Bankruptcy Court's jurisdiction for any disputes in this regard under the Sale Order. *Lastly*, the Debtors and/or Clean Royalty have possession, custody and control over the documents and records that Peck will need to prosecute his claims and defenses here; thus, Peck will need documents and discovery from the Debtors, which effects the Debtors' assets and implicates the Debtors' participation in this matter.

28. Accordingly, this action is related to the Chapter 11 Cases, and section 1412 applies.

### B. Transfer of This Action to Delaware is Warranted in the "Interest of Justice"

29. Regarding the second inquiry under section 1412, for the reasons set forth below, transfer is warranted "in the interest of justice."

30. As the Second Circuit has explained, "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness[.]" *Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990). Courts have considered the following seven factors in determining whether the transfer would serve the interest of justice:

> (1) the economic and efficient administration of the bankruptcy estate; (2) the so-called "home court" rule—the presumption that the district hearing the bankruptcy case is the proper venue for related actions; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having the controversy decided within its borders; (6) the enforceability of any judgment; and, (7) the plaintiff's original choice of forum.

*Gingras*, 2020 WL 13421138, at *9. "The first factor—economic and efficient administration of the estate—is generally considered to be the most important." *Id.*

31. These factors overwhelmingly weigh in favor of transferring venue to the District of Delaware. Factors one, two and three all weigh strongly in favor of transfer. As discussed above, Merchants' claims against Peck, and Peck's claims and defenses in connection therewith, are inextricably intertwined with each of their respective claims against the Debtors, Purchaser and/or BNRG. (*See supra*, ¶ 27). Having all these overlapping matters and issues heard before the same court – *i.e.*, the Bankruptcy Court – promotes judicial efficiency and the economic and efficient administration of the bankruptcy estate. It also will avoid any potential inconsistent results among different courts considering these overlapping issues. Furthermore, clearly factor 2 – the "home court" rule – weighs in favor of transfer.

32. The remaining factors are either neutral or should be afforded little weight and do not weigh against transfer. Factors four and six are clearly neutral: The parties would receive a fair trial in either forum, and a judgment from the Bankruptcy Court is no less enforceable against Peck as a judgment from this Court. With respect to factor five, the Larson Project itself is located in Maine, not Vermont. Furthermore, Plaintiffs are Iowa companies and their lead counsel in this matter appear to be located in Virginia. Thus, at its core, this is a collection action by an out-of-state surety. The State of Vermont ought not have a particular in interest in whether Merchant's indemnity claims against Peck are resolved in Delaware as opposed to Vermont. Thus, Peck submits that factor five is either neutral or should not weigh against transferring venue. Lastly, the seventh factor – "plaintiff's choice of forum" – should be given little weight as Plaintiffs are

Iowa companies and have participated and already submitted to the Bankruptcy Court's jurisdiction with respect to disputes related to the Debtors.[8]

33. Thus, it is in the interest of justice to transfer this action to the District of Delaware where the related Chapter 11 Cases are pending and being administered.

### C. Transfer of this Action to Delaware Also Promotes the Convenience of the Parties and Witnesses

34. While the interests of justice strongly favor transfer to the District of Delaware, the convenience of the parties also independently favors transfer.

35. As stated above, Plaintiff are Iowa companies and their lead counsel appears to be based in Virginia, which is closer to Delaware than Vermont. Furthermore, iSun, Inc. and iSun Industrial are both Delaware corporations. Their bankruptcies, key professionals, and books and records are in Delaware. Furthermore, while Peck resides in Vermont, he is an officer and director of the Debtors who served as their "first day" declarant and whose participation is crucial to the administration of the Chapter 11 Cases in Delaware.

36. Furthermore, as indicated above, Merchants claims against Peck are identical to its claims against the Debtors, as co-indemnitors and principal obligor, and Peck is asserting indemnification claims against the Debtors, all which will need be resolved in the Bankruptcy Court. Furthermore, Peck's claims and defenses implicate the Debtors' records and assets, as well as claims against BNRG. It will be most convenient for the parties to litigate all these overlapping

---

[8] While the Indemnity Agreement provides at the end of Paragraph Seventeenth that as to any legal action related thereto, Peck would "consent to the general jurisdiction of any local, state, or federal court of competent subject matter jurisdiction and waive any claim or defense… based on… improper venue, forum non conveniens or any similar basis," that provision, unlike the typical forum selection clause, does not provide for any specific forum – and, in fact, under that provision, the District of Delaware would be deemed just as much an agreed-upon, appropriate forum as the District of Vermont. At most, some measure of deference may be accorded Merchants' choice of venue under the language of this provision, but its choice of venue is certainly not dispositive under any law, and the above-discussed factors still overwhelmingly militate in favor of the transfer of this action to the District of Delaware.

67904/0001-48328872

matters in the Bankruptcy Court where Merchants has already consented to resolve disputes concerning related matters.

## II. Alternatively, This Action Should Be Transferred to the District of Delaware Pursuant to 28 U.S.C. § 1404

37. Alternatively, to the extent the Court considers 28 U.S.C. § 1404(a), venue should be transferred to the District of Delaware pursuant to section 1404(a) for substantially the same reasons discussed above. The analyses under section 1412 and section 1404(a) are substantially similar. *See Lehman Bros Holdings Inc. v. 1st Advantage Mortgage, LLC (In re Lehman Bros. Holdings Inc.)*, 594 B.R. 33, 50 (Bankr. S.D.N.Y. 2018) ("Whether this Court conducts its analysis of the relief requested in the Motions by applying section 1412 or, as the Defendants request, by applying section 1404(a), is largely inconsequential. Courts in this District have determined that the analyses under section 1404 and section 1412 are substantially similar.").

38. Transfer is appropriate under section 1404(a) if the action could have been brought in the transferee district, and transfer would serve the "interest of justice" and "convenience of the parties and witnesses." 28 U.S.C. § 1404(a). As discussed above: (a) the Bankruptcy Court has "related to" jurisdiction over Merchants' claims against Peck and, thus, the action could have been commenced as adversary proceeding in the Chapter 11 Cases; and (b) the transfer of the action to Delaware is both in "interest of justice" and convenient for the parties and witnesses.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests transfer of the action to the United States Court for the District of Delaware, pursuant to 28 U.S.C. § 1412 or, alternatively, 28 U.S.C. § 1404(a).

13

67904/0001-48328872

Dated: September 11, 2024
      New York, New York

Respectfully submitted,

/s/ Evan J. O'Brien
Andre Bouffard, Esq.
Evan O'Brien, Esq.
**DOWNS RACHLIN MARTIN**
199 Main Street
Burlington, VT 05402
Telephone: (802) 863-2375
Email: abouffard@drm.com
        eobrien@drm.com

Daniel F.X. Geoghan, Esq. (*pro hac vice* forthcoming)
Adam Sklar, Esq. (*pro hac vice* forthcoming)
Mark Tsukerman, Esq. (*pro hac vice* forthcoming)
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: dgeoghan@coleschotz.com
       asklar@coleschotz.com
       mtsukerman@coleschotz.com

*Counsel for Defendant Jeffrey Peck*