UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| **MERCHANTS BONDING COMPANY (MUTUAL)** and **MERCHANTS NATIONAL BONDING, INC.**, <br><br> Plaintiffs, <br> v. <br><br> **JEFFREY J. PECK,** <br><br> Defendant. | CIVIL ACTION NO. 2:24-cv-00845-cr <br><br> Civil Action <br><br> **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM** |

Defendant, Jeffery J. Peck, ("Defendant" or "Peck") hereby answers the Complaint of Plaintiffs, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively "Plaintiffs" or "Merchants") and states as follows:

## AS TO PARTIES AND JURISDICTION

1. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint, and neither admits nor denies those allegations.

2. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint, and neither admits nor denies those allegations.

3. Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4. Paragraph 4 of the Complaint calls for a legal conclusion to which no response is required.

5. Paragraph 5 of the Complaint calls for a legal conclusion to which no response is required.

## AS TO FACTUAL ALLEGATIONS

6. Defendant denies the allegations contained in Paragraph 6 of the Complaint.

7. Defendant admits the allegations contained in Paragraph 7 of the Complaint.

8. Defendant admits the allegations contained in Paragraph 8 of the Complaint.

9. Defendant admits the allegations contained in Paragraph 9 of the Complaint.

10. Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11. Defendant admits the allegations contained in Paragraph 11 of the Complaint.

## AS TO THE INDEMNITY AGREEMENT, PROJECTS & BONDS

12. Defendant denies the allegations contained in Paragraph 12 of the Complaint, and further refers to the written General Agreement of Indemnity for an accurate recitation of its terms.

13. In response to the allegations contained in Paragraph 13 of the Complaint, Defendant refers to the written Amendment to Indemnity Agreement for an accurate recitation of its terms.

14. In response to the allegations contained in Paragraph 14 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

15. In response to the allegations contained in Paragraph 15 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

16. In response to the allegations contained in Paragraph 16 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

17. In response to the allegations contained in Paragraph 17 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

18. In response to the allegations contained in Paragraph 18 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

19. In response to the allegations contained in Paragraph 19 of the Complaint, Defendant refers to the written Indemnity Agreement for an accurate recitation of its terms.

20. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, and neither admits nor denies those allegations.

## AS TO THE PRINCIPALS' DEFAULTS, BOND CLAIMS & SURETY LOSSES

21. In response to the allegations contained in Paragraph 21 of the Complaint, Defendant denies that it was properly terminated for default/cause by BD Solar Larson, LLC, and further refers to the cited written communications dated May 24 and May 31, 2024 for an accurate recitation of their contents.

22. Defendant admits the allegations contained in Paragraph 22 of the Complaint and further refers to the cited written communication dated May 20, 2024 for an accurate recitation of its contents.

23. In response to the allegations contained in Paragraph 23 of the Complaint, Defendant denies that it was properly terminated for default/cause by BD Solar Norridgewock, LLC, and further refers to the cited written communication dated May 24, 2024 for an accurate recitation of its contents.

24. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint, and neither admits nor denies those allegations.

25. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint, and neither admits nor denies those allegations.

67904/0001-48522152v1

26. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and neither admits nor denies those allegations.

27. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, and neither admits nor denies those allegations.

28. Defendant denies the allegations contained in Paragraph 28 of the Complaint.

29. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint, and neither admits nor denies those allegations.

### AS TO THE SURETY'S COLLATERAL DEMAND TO THE INDEMNITORS

30. In response to the allegations contained in Paragraph 30 of the Complaint, Defendant admits that Plaintiffs sent a Collateral Demand to Defendant, but denies the remaining allegations contained therein.

31. In response to the allegations contained in Paragraph 31 of the Complaint, Defendant denies the allegations contained therein, and further refers to the Indemnity Agreement for an accurate recitation of it terms.

32. In response to the allegations contained in Paragraph 32 of the Complaint, Defendant admits that he did not pay the requested "collateral security," but denies the remaining allegations contained therein.

### AS TO THE CORPORATE INDEMNITORS' BANKRUPTCY FILINGS

33. Defendant admits the allegations contained in Paragraph 33 of the Complaint.

34. Paragraph 34 of the Complaint calls for a legal conclusion to which no response is required.

35. In response to the allegations contained in Paragraph 35 of the Complaint, Defendant refers to the Indemnity Agreement for an accurate recitation of its terms.

36. Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37. Paragraph 37 of the Complaint calls for a legal conclusion to which no response is required.

38. Defendant denies the allegations contained in Paragraph 38 of the Complaint.

## AS TO THE FIRST COUNT
## DECLARATORY RELIEF – 28 U.S.C. § 2201

39. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

40. Defendant admits the allegations contained in Paragraph 40 of the Complaint.

41. Paragraph 41 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

## AS TO THE SECOND COUNT
## CONTRACTUAL INDEMNITY – LOSSES AND EXPENSES

42. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

43. Paragraph 43 of the Complaint calls for a legal conclusion to which no response is required. Defendant further refers to the Indemnity Agreement for an accurate recitation of its terms.

44. Defendant denies the allegations contained in Paragraph 44 of the Complaint.

45. Defendant denies the allegations contained in Paragraph 45 of the Complaint.

46. Paragraph 46 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

47. Paragraph 47 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

## AS TO THE THIRD COUNT
## CONTRACTUAL INDEMNITY - COLLATERAL

48. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

49. In response to the allegations contained in Paragraph 49 of the Complaint, Defendant refers to the Indemnity Agreement for an accurate recitation of its terms.

50. In response to the allegations contained in Paragraph 50 of the Complaint, Defendant admits that Plaintiffs issued a written demand to Defendant, and refers to the written demand for an accurate recitation of its contents.

51. Paragraph 51 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

## AS TO THE FOURTH COUNT
## SPECIFIC PERFORMANCE – COLLATERAL

52. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

53. In response to the allegations contained in Paragraph 53 of the Complaint, Defendant refers to the Indemnity Agreement for an accurate recitation of its terms.

54. Paragraph 54 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

55. Paragraph 55 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

56. Paragraph 56 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

## AS TO THE FIFTH COUNT
## COMMON LAW INDEMNITY

57. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

58. Paragraph 58 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

59. Defendant denies the allegations contained in Paragraph 59 of the Complaint.

60. Defendant denies the allegations contained in Paragraph 60 of the Complaint.

61. Paragraph 61 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

## AS TO THE SIXTH COUNT
## QUI TIMET / EXONERATION

62. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

63. Paragraph 63 of the Complaint calls for a legal conclusion to which no response is required.

64. Paragraph 64 of the Complaint calls for a legal conclusion to which no response is required.

65. Paragraph 65 of the Complaint calls for a legal conclusion to which no response is required.

## AS TO THE SEVENTH COUNT
## INJUNCTIVE RELIEF

66. Defendant repeats and realleges the answers contained in the preceding paragraphs as if stated fully herein.

67. In response to the allegations contained in Paragraph 67 of the Complaint, Defendant admits that Plaintiffs issued a written "Collateral Demand" demand to Defendant, and refers to the written demand for an accurate recitation of its contents and refers to the Indemnity Agreement for an accurate recitation of its terms.

68. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint, and neither admits nor denies those allegations, except Defendant admits that the referenced bankruptcy petitions were filed.

69. Defendant admits he is an individual indemnitor of certain bonds issued by Plaintiffs, but Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 69 of the Complaint, and neither admits nor denies those allegations.

70. Defendant admits he is an individual indemnitor of certain bonds issued by Great Midwest, but Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 70 of the Complaint, and neither admits nor denies those allegations.

71. Defendant lacks sufficient knowledge as to Merchants' concerns, but denies the rest of the allegations contained in Paragraph 71 of the Complaint.

72. In response to the allegations contained in Paragraph 72 of the Complaint, Defendant refers to the referenced deed for an accurate recitation of its terms, and otherwise denies the allegations.

73. Defendant denies the allegations contained in Paragraph 73 of the Complaint, except to admit that a transfer was made within those time parameters.

74. Defendant denies the allegations contained in Paragraph 74 of the Complaint.

75. Defendant denies the allegations contained in Paragraph 75 of the Complaint.

76. Paragraph 76 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

77. Paragraph 77 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

78. Paragraph 78 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

79. Defendant denies the allegations contained in Paragraph 79 of the Complaint.

**WHEREFORE**, Defendant Jeffrey J. Peck demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding Defendant costs, attorneys' fees, expenses, and any other additional and further relief as the Court deems just and appropriate under the circumstances.

## FIRST SEPARATE DEFENSE

Plaintiffs' claims are barred or limited by their failure to mitigate their damages.

## SECOND SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' breach of the implied covenant of good faith and fair dealing.

## THIRD SEPARATE DEFENSE

Plaintiffs' own conduct is the proximate cause of its loss, damages and injury, if any.

## FOURTH SEPARATE DEFENSE

Plaintiffs' claims are barred by reason of their material breaches of their contractual obligations to Defendant.

### FIFTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### SIXTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on the doctrine of unconscionability.

### SEVENTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, based on a failure of consideration.

### EIGHTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the Plaintiffs' fraudulent conduct.

### NINTH SEPARATE DEFENSE

Plaintiffs' claims are barred by illegality.

### TENTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because their injuries were caused by a fellow servant.

### ELEVENTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches and/or unclean hands.

### TWELFTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' failure to properly account.

### THIRTEENTH SEPARATE DEFENSE

Plaintiffs' claims are barred based on res judicata or collateral estoppel.

### FOURTEENTH SEPARATE DEFENSE

Plaintiffs' claims are barred by the statute of frauds.

67904/0001-48522152v1

## FIFTEENTH SEPARATE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## COUNTERCLAIM

Defendant/Counterclaimant Jeffrey J. Peck ("**Peck**"), as and for his Counterclaim against Plaintiffs/Counterclaim-Defendants, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc., states and alleges the following:

### PARTIES

1. At all relevant times herein, Jeffrey J. Peck is and was an individual and resident of Williston, Vermont.

2. Upon information and belief, at all relevant times herein, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively "**Merchants**") are and were Iowa corporations with a principal place of business located in West De Moines, Iowa.

### BACKGROUND

3. Pursuant to a contract dated December 22, 2022 (the "**Larson Contract**"), BD Solar Larson, LLC c/o BNRG Maine LLC ("**BNRG**") engaged iSun Industrial, Inc. to provide engineering, procurement and construction services for a solar energy project located in Scarborough, Maine (the "**Larson Project**"). The Larson Project is a 6.51 megawatt direct current community solar power facility.

4. Thereafter, on or about February 8, 2023, Peck, along with iSun Industrial, Inc. (as Contractor) and iSun, Inc. (collectively, "**iSun**"), entered into a certain General Application and Agreement of Indemnity Contractors Form with Merchants (the "**Indemnity Agreement**").

11

5.      In connection therewith, Merchants issued eight (8) separate payment and performance bonds in February 2023 on behalf of iSun, relating to four (4) separate solar energy projects on which iSun was serving as contractor, including the Larson Project.

6.      iSun diligently and effectively discharged its obligations under the Larson Contract and reached mechanical completion of the Larson Project, though BNRG refused to acknowledge mechanical completion.

7.      Throughout the course of iSun's performance of the Larson Project, BNRG was in breach of the Larson Contract, including, but not limited to, based on its failure to make payment when properly due and owing and its failure to timely approve change orders for: (i) reasonable extensions of time due to delays outside of iSun's control; and (ii) payments for additional requested and required work performed by iSun and its subcontractors.

8.      Merchants was well aware of the delays caused by BNRG and BNRG's failure to provide reasonable extensions of time to achieve mechanical completion, as Peck had direct discussions with Merchants about those issues.

9.      In early February 2024, Merchants required that iSun sign an Irrevocable Letter of Direction ("**ILD**") in connection with the Larson Project and the three other iSun projects for which Merchants had issued bonds. Those ILDs provided that "[t]o preserve [Merchant's] rights, including but not limited to, assignment and subrogation rights, [iSun] hereby irrevocably directs that any and all payments due or to become due of any kind or nature on account of the above-referenced Contract entered into by [iSun] and Obligee be made payable to Merchants National Bonding, Inc. by wire transfer…."

10.     Pursuant to the ILDs, iSun also consented to Merchants' payment to project subcontractors and suppliers out of those funds – and "to Obligee [project owner] working

12

directly with [Merchants] regarding the investigation relating to the completion and closeout of the Project."

11. Thus, the owners of each of these projects, including the Larson Project, from February 2024 forward, made project payments directly to Merchants, who also had been provided authority in the ILDs to deal directly with the project owners regarding the completion and closeout of the projects. The owners of all four projects were directed to make their payments to Merchants into a single bank account.

12. As alluded to in the ILD, pursuant to Section SIXTH (d) of the Indemnity Agreement, the Indemnitors, including iSun and Peck, assigned to Merchants, "as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any indebtedness or liability of the [Indemnitors] to the [Merchants]" – among other things – "[a]ll monies due or to become due to the [Indemnitors] arising out of or in any way related to any bonded contracts…, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, and claims and the proceeds thereof." The Indemnitors further authorized Merchants to pursue any and all such claims in the name of the Indemnitors or its own name – and to collect any payments made in furtherance of these assigned rights.

13. Upon information and belief, also starting in February 2024, under the Larson Project's payment bond, Merchants paid out approximately $2,526,708.43 in claims to subcontractors. Merchants made such payments because: (1) it was fully secured by the Larson Project's accounts receivable and payments that would come due as the project approached completion; and (2) so that, in the meantime, the subcontractors would continue to perform work and keep the Larson Project proceeding to completion.

14. Ultimately, however, rather than acknowledge mechanical completion and release substantial milestone funds due at that time, BNRG continued to hold up payments properly due and owing under the Larson Contract, which would have been payable directly to Merchants.

15. BNRG also used iSun's alleged failure to reach mechanical completion within the time allowed as a pretext to terminate the Larson Contract for cause by letter dated May 24, 2024. BNRG's contract termination, was wrongful, in bad faith, and in breach of the Larson Contract

16. Prior to May 24, 2024, Peck had advised Merchants that iSun was likely to file for Chapter 11 bankruptcy within the following week or two – and then did so on June 3, 2024.

17. Upon information and belief, Merchants advised BNRG of iSun's pending bankruptcy filings and prompted and colluded with BNRG to terminate the Larson Contract.

18. In fact, Merchants, upon learning of the pending bankruptcy filings, had first attempted to get iSun to voluntarily terminate the Larson Contract, but iSun refused.

19. Merchants had, and continues to have, substantial claims against BNRG in connection with BNRG's material breaches and wrongful termination of the Larson Contract, which exceed Merchants' claims asserted against Peck under the Indemnity Agreement.

20. Merchants also has substantial receivables and claims due on other bonded projects that it has refused or failed to collect or otherwise credit toward the amounts it claims due from Peck.

21. During the course of the performance of the Larson Contract, and following its wrongful termination, Merchants has failed to make reasonable efforts to enforce its rights to collect the substantial outstanding accounts receivable from BNRG, and any payments due resulting from the termination, wrongful or not. Merchants has had the right to collect those

funds directly under the terms of the Indemnity Agreement, the ILDs and otherwise by operation of law.

22. In fact, on July 10, 2024, Merchants advised Peck that BNRG actually had made two payments to Merchants into its ILD funds control account on the Larson Project in the amounts of $118,106.36 and $172,221.89, respectively, for a total payment to Merchants of $290,343.25. Previously, upon information and belief, Merchant had another $97,721.09 in its ILD account that was later transferred out.

23. It is unclear whether Merchants has been keeping a full and accurate accounting of amounts that it has collected and should have been applied on account of the Indemnitors, including Peck.

**FIRST COUNTERCLAIM**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

24. Peck repeats and realleges each and every one of the foregoing allegations with the same force and effect as if fully set forth herein.

25. Every contract contains an implied covenant of good faith and fair dealing, whereby each party to a contract has a duty of good faith to the other and is to act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

26. In light of the facts as aforesaid, Merchants has breached the covenant of good faith and fair dealing implied in the Indemnity Agreement by:

 (a) Failing to diligently prosecute its assigned rights to collect all amounts properly due on the bonded contracts;

 (b) Willfully failing to mitigate its damages;

  (c) Interfering with the Larson Contract and prompting and colluding with BNRG as to the termination thereof; and

  (d) Failing to properly account to Peck and abusing its power to make certain demands of Peck.

27. As a direct and proximate result of Merchants' breach of the implied covenant of good faith and fair dealing, Peck has sustained and will continue to sustain substantial economic and consequential damages.

**WHEREFORE**, Defendant/Counterclaimant Jeffrey J. Peck demands judgment against Plaintiffs/Counterclaim-Defendants, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. as follows:

  (a) Compensatory and consequential damages;

  (b) Punitive damages;

  (c) Attorneys' fees and costs of suit;

  (d) Interest; and

  (e) Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Defendant demands a trial by jury on all claims so triable as to his Answer, and Affirmative Defenses, and Counterclaim.

67904/0001-48522152v1

Dated: September 30, 2024  Respectfully submitted,
New York, New York

*/s/ Evan J. O'Brien*
Andre Bouffard, Esq.
Evan O'Brien, Esq.
**DOWNS RACHLIN MARTIN**
199 Main Street
Burlington, VT 05402
Telephone: (802) 863-2375
Email: abouffard@drm.com
eobrien@drm.com

Daniel F.X. Geoghan, Esq. (*pro hac vice*)
Adam Sklar, Esq. (*pro hac vice*)
Mark Tsukerman, Esq. (*pro hac vice*)
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: dgeoghan@coleschotz.com
asklar@coleschotz.com
mtsukerman@coleschotz.com

*Counsel for Defendant Jeffrey Peck*

67904/0001-48522152v1