## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF VERMONT

| | |
|---|---|
| **MERCHANTS BONDING COMPANY (MUTUAL)**<br><br>**AND**<br><br>**MERCHANTS NATIONAL BONDING, INC.**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**JEFFREY J. PECK, an individual**<br><br>      **Defendant.** | **Civil Action No.: 2:24-cv-00845-cr** |

### PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively, "Merchants" or "Surety"), by and through their undersigned counsel, and pursuant to L.R. 7, respectfully submit the following Reply Memorandum to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunctive Relief.[1]

Defendant's Opposition loses sight of the document driving this entire litigation: the Indemnity Agreement. This case arises out of indemnity obligations in connection with the Indemnity Agreement that Defendant, Jeffrey J. Peck ("Defendant" or "Mr. Peck"), and the iSun Entities entered into with Merchants. Merchants is seeking injunctive relief to compel Mr. Peck to

---

[1] On September 24, 2024, Plaintiffs filed a Stipulated Motion for Extension of Page Limit for its Memorandum in Support of its Motion for Preliminary Injunctive Relief [DKT. 33]. The Court granted this Motion on September 24, 2024 [DKT 34]. Therefore, any and all discussion in Defendant's Opposition regarding page limits is now moot and will not be addressed herein.

provide collateral security due and owing, as mandated by the Indemnity Agreement. In further support thereof, Plaintiffs state as follows:

I. **DEFENDANT'S DISCUSSION OF THE LARSON PROJECT AND BNRG CLAIMS DOES NOTHING MORE THAN DISTRACT THE COURT; THE BOTTOM LINE IS THE INDEMNITY AGREEMENT PROVIDES MERCHANTS THE RIGHT TO DEMAND COLLATERAL SECURITY**

Defendant offers the court a lengthy prelude regarding the BD Solar Larson Project (the "Larson Project"), owned by BNRG Maine LLC ("BNRG"), but the facts set forth are immaterial to this Motion for Preliminary Injunctive Relief. However, to set the record straight, Merchants made payments to iSun, Inc.'s ("iSun") subcontractors and suppliers on the Larson Project because iSun advised Merchants that it could not make those necessary payments. *See* Rebuttal Affidavit of Shana Rothman, Esq. attached hereto as Exhibit B, ¶ 5. Pursuant to the terms of the Larson Project Payment Bond, Merchants was "jointly and severally" liable "to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract." *See* Larson Bond, attached hereto as Exhibit C.

Furthermore, through the Indemnity Agreement, Mr. Peck gave Merchants the right to determine for itself how a demand on the Larson Project Bond is resolved. *See* Exhibit A. Merchants did not "instigate" or "prompt" BNRG to terminate the Larson Contract in advance of the bankruptcy filings, nor does that allegation have any bearing on this case. Exhibit B, ¶ 7. Importantly, and to quell Defendant's concern, Merchants and BNRG entered into a settlement on September 4, 2024, with mutual releases, so Merchants no longer has "substantial claims against BNRG." Exhibit B, ¶ 8. Although these facts are irrelevant to this Motion, this situation begged clarification and truth.

Thus, to shift focus to what is important, under the Indemnity Agreement Defendant gave Merchants the right to demand collateral, and while Defendant agreed he has the duty to post that

collateral, Defendant has now refused to do so. *See generally*, <u>Exhibit A</u>. Thus, Merchants seeks that collateral by way of a Motion for Preliminary Injunctive Relief.

## II.  INJUNCTIVE RELIEF SHOULD BE ISSUED WHERE MONEY DAMAGES ARE SOUGHT AND THE DEFENDANT IS INSOLVENT

Injunctive relief is appropriate here, where money damages are sought to be deposited as collateral with Merchants, because Defendant has proven himself to be insolvent.[2] Mr. Peck even admits to this in his Opposition, as he states: "Peck simply does not have that amount of cash, so he would have to borrow funds and/or sell and liquidate assets to even attempt to satisfy such a payment obligation—or be forced into filing personal bankruptcy." Def. Opp'n. p. 13.

"[W]e have held that a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency." *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 F. App'x 779, 781–82 (2d Cir. 2010). "[I]nsolvency may render otherwise compensable harm irreparable because there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *CRP/Extell Parcel I, L.P.,* 394 F. App'x at 781–82 (citing *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249–50 (2d Cir.1999)) (quotations omitted); *see also Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380, 386 (7th Cir.1984) (preliminary injunction may be granted upon a showing that an award of damages will be

---

[2] Mr. Peck is the individual indemnitor for four Bonds that Merchants issued, as related to the above-captioned litigation, the value of which total $14,059,201.30. *See* <u>Exhibit B,</u> ¶ 10. Upon information and belief, Mr. Peck is also an individual indemnitor for nine (9) other bonds issued by Great Midwest Insurance Company, for the benefit of iSun Industrial, LLC and Peck Electric Co., the value of which total $25,830,346.88. *See* <u>Exhibit B,</u> ¶ 11. Accordingly, Mr. Peck has numerous obligations as an individual indemnitor for surety bonds that value more than $39,000,000.00 and has been unable to pay his debts as they arose in the normal course of his responsibility as indemnitor on the Bonds. Furthermore, Mr. Peck has already demonstrated his ability to quickly transfer and dissipate assets, as fully described in Merchants' Motion and Memorandum of Law for Preliminary Injunctive Relief.

inadequate because defendant may be insolvent by the end of trial); *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1227 (8th Cir. 1987) (citing *Signode Corp. v. Weld-Loc Systems, Inc.,* 700 F.2d 1108, 1111 (7th Cir.1983)) ("We similarly hold that a preliminary injunction may issue to protect plaintiff's remedy . . . In deciding whether the plaintiff has demonstrated sufficient evidence to support the claim that it will be unable to recover absent a preliminary injunction, the Seventh Circuit has concluded, and we agree, that '[t]he resolution of this issue depends on two factors—the [non-movant's] resources and the potential magnitude of eventual damages.'").

Accordingly, the injunctive relief Merchants seeks is more than appropriate given Mr. Peck's current financial state, and the likelihood his financial state will be even worse at the conclusion of trial.

## III. THE INDEMNITY AGREEMENT CALLS FOR THE IMMEDIATE DEPOSIT OF COLLATERAL SECURITY UPON DEMAND

The Indemnity Agreement is the controlling document in this litigation and it plain and simply requires Mr. Peck to deposit collateral "immediately" upon demand.

> FOURTEENTH: Immediately upon demand, the [Indemnitors] will deposit with the [Surety], as collateral security, money or other collateral satisfactory to the [Surety], equal to (1) the liability of the [Surety], if established; (2) the liability asserted against the [Surety]; or (3) the reserve established by the [Surety], or any increase thereof, to cover any liability for any loss or expense for which the [Indemnitors] may be obligated to indemnify the [Surety] under the terms of this Agreement . . . .

Exhibit A, pp. 4-5. The purpose of an indemnity agreement is to provide security to a surety in the event of a third party's claim for damages—whereas sureties play a vital role in the construction industry, and a lack of security may not be adequately remedied by a money judgment months or years later. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.,* 2010 WL 11627203, at \*9 (E.D.N.Y. May 19, 2010) (citing *Liberty Mutual Insurance Co. v. Aventura Engineering & Construction Corp.,* 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008)) ("Courts nationally have recognized the vital role of

sureties in the construction industry . . . Accordingly . . . the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties."). In essence, Merchants is asking the Court to order what Mr. Peck already agreed to do in the Indemnity Agreement.

Accordingly, the collateral security provision should be enforced by way of injunctive relief, to secure the collateral Merchants is entitled to.

### IV. MERCHANTS MAKES A CLEAR SHOWING OF IRREPARABLE HARM TO SUPPORT ITS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

"[H]aving bargained for collateral security and having failed to receive it," Merchants' "injury is real and immediate and cannot be remedied after the fact." *Ohio Cas. Ins. Co. v. Fratarcangelo,* 7 F. Supp. 3d 206, 214–15 (D. Conn. 2014) ("The true injury to Ohio Casualty is not the monetary loss, but the loss of its bargained-for and contractually-guaranteed position as a secured creditor of the Defendants, and this loss cannot be rectified post judgment."). Merchants is not required to establish with absolute certainty that irreparable harm will occur, but it must show that "irreparable injury is likely in absence of an injunction." *Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). As part of the Indemnity Agreement, Merchants bargained for a specific security arrangement, wherein the Indemnitors agreed to post collateral security upon demand. *See generally*, Exhibit A. Without enforcement of the collateral security provision, Merchants will forfeit its bargained-for contract rights and suffer irreparable harm from its loss. The combination of this loss with the facts set forth in Merchants' Memorandum of Law [DKT. 21], noting in great detail Defendant's financial obligations and dissipation of assets, makes it

reasonably likely that Defendant will deplete or otherwise destroy his assets, leaving insufficient assets to satisfy a judgment in favor of Merchants.[3]

Other courts have similarly found that a surety in the same position as Merchants has an immediate and irreparable risk of injury. *See Am. Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 302 (2d Cir. 1989) ("Having bargained for collateral security and having failed to receive it, [the surety's] injury is real and immediate"); *Westfield Ins. Co. v. Rainey Contracting, LLC*, 179 F. Supp. 3d 798, 801–02 (E.D. Tenn. 2016) (agreeing with a surety that without injunctive relief requiring collateralization, the surety would suffer irreparable harm by being liable for damages when the risk of liability should be shifted to the indemnitors under the indemnity agreement); *XL Specialty Ins. Co. v. Bighorn Constr. & Reclamation LLC*, 2022 WL 2105925, at *10 (D. Md. June 10, 2022) (recognizing that irreparable harm based on a contractual provision is well-established in the district); *Great Am. Ins. Co. v. SRS, Inc.*, 2011 WL 6754072, at *8 (M.D. Tenn. Dec. 23, 2011) (observing that courts "routinely" find irreparable harm to a surety if denied receipt of collateral after a proper demand).

Accordingly, this Court too should find that Merchants will suffer irreparable harm absent the award of preliminary injunction.

## V.   MERCHANTS MAKES A CLEAR SHOWING THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

Defendant has failed to cite one single case that requires a surety to mitigate damages in the context of an indemnity agreement. Regardless, a "duty to mitigate," does not bar Merchants

---

[3] Regardless of what Mr. Peck alleges in his affidavit, the timing of Mr. Peck's listing and sale of the Florida Property is no coincidence. While the sale of the Florida Property was for $1,960,000.00, Mr. Peck has held onto this money somewhere while Merchants continues to incur losses on the Bonds. *See* Exhibit B, ¶ 12. Furthermore, Mr. Peck's affidavit, at Paragraph 22, mentions "bonuses" he received in 2023 as part of an "executive incentive"–yet Merchants has never been offered any of these financial assets to reimburse the losses suffered by Merchants on the Bonds. *See* Exhibit B, ¶ 13.

from recovery and is irrelevant as to Merchants' likelihood of success on the claims asserted. *See First Nat. Ins. Co. of Am. v. Sappah Bros. Inc.,* 771 F. Supp. 2d 569, 574 (E.D.N.C. 2011) ("Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable…Because the doctrine does not operate as a bar to liability, whether or not defendants might be successful on this defense is irrelevant to First National's likelihood of success on its breach of contract claim for specific performance.").

The Indemnity Agreement specifies that Merchants can seek full reimbursement for any payments made under the belief that it was necessary or due to potential liability, regardless of whether the principal was actually in default or whether any actual liability existed under the bonds:

> [Merchants] shall have the exclusive right for itself and the Undersigned to decide and determine whether any claim, demand, suit or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and [Merchants'] determination shall be final, conclusive and binding upon the Undersigned . . .In the event of a payment by [Merchants], the Undersigned agree . . . [Merchants] shall be entitled to charge for any and all disbursements made by it in good faith and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed . . . whether or not such liability, necessity or expediency existed.

Exhibit A, p. 2. Thus, in the context of indemnity agreements, the specific terms of the agreement dictate the obligations and rights of the surety. The Indemnity Agreement is undoubtedly enforceable, and under these principles, Defendant is bound by the obligations therein. Pursuant to the Indemnity Agreement, Merchants is entitled to recover from the Defendant the full amount of its losses and expenses including, without limitation, those losses and expenses not yet incurred but expected to be incurred. *See* Exhibit A.

Moreover, Merchants' claims, are in part for specific performance, requiring Defendant to post collateral. The Defendant is explicitly required to "unconditionally indemnify and keep indemnified [Merchants] against any and all liability, loss and expense of whatsoever kind or

nature . . . ." Exhibit A, p. 1. The Indemnity Agreement also requires the Indemnitors to deposit collateral "immediately upon demand." Exhibit A, p.4. Merchants is therefore entitled to the protections of the Indemnity Agreement, including the collateral security provision, and the specific performance thereof. This conclusion has been arrived at by courts nationwide. *See e.g., Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (citing *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F.Supp. 680, 683–84 (S.D.N.Y.1939)) (quotations omitted) ("Sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced."); *see also Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014).[4]

## VI.  THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST CLEARLY FAVORS THE ISSUANCE OF THE PRELIMINARY INJUNCTION

First and foremost, the fact that Defendant "simply does not have that amount of cash" (Def. Opp'n. p. 13) does not have any weight on this analysis. An indemnitor who enters into an Indemnity Agreement, which makes explicit his obligations and liabilities, is held to those obligations regardless of whether he "has the cash."

When "balancing the equities," the root of the question is whether the harm Merchants will suffer in the absence of preliminary relief exceeds any potential harm to Defendant if an injunction is issued. Compelling Defendant to deposit collateral security, as Defendant agreed to do when he bound himself to the Indemnity Agreement, will not cause Defendant harm—rather, it merely

---

[4] The fact that Defendant wants to be given the opportunity to take discovery and assert claims against Merchants has no bearing on this Motion for Preliminary Injunctive Relief, nor does it have any bearing on Merchants' success on its own, very straightforward claims. Further, the purpose of this Motion does not require a response to the kitchen sink of assertions Defendant has made in its Opposition, and while Merchants reserves the rights to respond to each of those assertions, with respect for the Court's time, this Reply is not the place for such a response.

holds Defendant responsible for the obligations Defendant agreed to in the very explicit terms of the Indemnity Agreement. Thus, it would be equitable for this Court to issue an injunction requiring Defendant to comply with the Indemnity Agreement—the contents and validity of which Defendant does not dispute. *See Philadelphia Indem. Ins. Co. v. DB Booneville, LLC,* 2024 WL 4016373, at *9 (S.D. Iowa July 12, 2024) ("The Court cannot accept their position that it would be inequitable to issue an injunction ordering them to comply with provisions in a contract of unchallenged validity to which the Indemnitors undisputedly agreed.").

Moreover, there is a long list of reasons why injunctive relief favors public interest, many of which Merchants has already provided in its Motion. However, should those already listed not be compelling enough, there is the simple fact that allowing indemnitors to disclaim their contractual obligations will not promote the reliability of future contracts. Furthermore, the Bonds Merchants issued were all for solar projects, which Vermont has an interest in continuing to support—but, failure for a bonding company to provide the requisite bonds for these types of projects, in fear that their indemnitors will be let off the liability hook, is not in favor of the public interest at all. *See Nordic Windpower USA, Inc. v. Jacksonville Energy Park, LLC,* 2012 WL 1388357, at *17–18 (D. Vt. Apr. 19, 2012) (citing 30 V.S.A. § 8001(a)(2)) ("The Vermont General Assembly has determined: it is in the interest of the people of the state to promote the state energy policy . . . by . . . [s]upporting development of renewable energy and related planned energy industries in Vermont, and the jobs and economic benefits associated with such development, while retaining and supporting existing renewable energy infrastructure."). It is therefore strongly in the interest of the public to issue the requested preliminary injunction.

WHEREFORE, Plaintiffs Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. respectfully request that this Court order Defendant Jeffrey J. Peck to deposit collateral

security with the Surety in the amount of $3,388,215.72, sufficient to indemnify the Surety for all

losses and expenses, including attorneys' fees and consultants' fees, the Surety may have incurred,

and will continue to incur, as a result of having issued the surety bonds.

**DATE**: October 3, 2024                    Respectfully submitted,

**MERCHANTS BONDING COMPANY
(MUTUAL) AND MERCHANTS
NATIONAL BONDING, INC.**

By Counsel:

*/s/ Lisa B. Shelkrot, Esq.*
Erin M. Heins, Esq.
Lisa B. Shelkrot, Esq.
**LANGROCK SPERRY & WOOL**
210 College Street, Suite 400
Burlington, Vermont 05402
Telephone: (802) 864.0217
Facsimile: (802) 864.0137
eheins@langrock.com
lshelkrot@langrock.com


*/s/ Lauren P. McLaughlin, Esq.*
Lauren P. McLaughlin, Esq. (admitted *pro hac vice*)
Ashley P. Cullinan, Esq. (admitted *pro hac vice*)
**SMITH CURRIE OLES LLP**
1921 Gallows Road, Suite 850
Tysons, Virginia 22182
Telephone: (703) 506.1990
Facsimile: (703) 506.1140
lpmclaughlin@smithcurrie.com
apcullinan@smithcurrie.com