## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF VERMONT

| | |
|---|---|
| **MERCHANTS BONDING COMPANY (MUTUAL)**<br><br>**AND**<br><br>**MERCHANTS NATIONAL BONDING, INC.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JEFFREY J. PECK, an individual**<br><br>**Defendant.** | **Civil Action No.: 2:24-cv-00845-cr** |

## PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively, "Merchants" or "Surety"), by and through their undersigned counsel, hereby move to dismiss with prejudice Defendant's Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of their Motion, Merchants submits the following incorporated Memorandum of Law.

### I.     PROCEDURAL HISTORY

This case is an indemnity suit in which Merchants seeks to enforce its right to recover losses, costs, and expenses in connection with having issued several surety bonds (the "Bonds") for various entities owned and/or controlled by Defendant, Jeffrey J. Peck ("Defendant" or "Mr. Peck"), including iSun Industrial, LLC, iSun, Inc., and Peck Electric Co. (collectively, the "iSun Entities"), and for which Mr. Peck individually guaranteed the reimbursement of Merchants' losses, costs, and expenses. Merchants filed its Complaint against Defendant, an individual

indemnitor to Merchants, on August 2, 2024, in the present action, asserting claims arising out of a General Indemnity Agreement, and amendment thereto (collectively, the "Indemnity Agreement").[1] On August 29, 2024, Merchants agreed to Defendant's requested extension of time to file an Answer, allowing Defendant through September 30, 2024, to file a responsive pleading.

Merchants filed a Motion for Preliminary Injunctive Relief (DKT. 21) on September 5, 2024, arising out of additional rights granted to Merchants in the Indemnity Agreement, which Defendant opposed on September 19, 2024 (DKT. 28). Defendant filed a Motion to Transfer Venue to the District of Delaware (DKT. 24) on September 11, 2024, which Merchants opposed on September 25, 2024 (DKT. 35), on the grounds of a forum selection clause in the Indemnity Agreement and the lack of connection to the iSun Entities' bankruptcy proceedings in Delaware. Both motions are pending before this Court.

On September 30, 2024, Defendant filed an Answer to Merchants' Complaint, accompanied by a Counterclaim (DKT. 36), asserting one count for breach of the implied covenant of good faith and fair dealing against Merchants. This Motion to Dismiss Defendant's Counterclaim follows, as the count for breach of the implied covenant of good faith and fair dealing cannot supplant the express terms of the parties' written Indemnity Agreement.

## II.    ARGUMENT

### a.    LEGAL STANDARD

To survive a motion to dismiss, a party must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] The Indemnity Agreement is attached hereto as <u>Exhibit A</u>.

(2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "'two-pronged approach' to evaluate the sufficiency of the complaint." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" 594 F.3d at 161 (quoting 556 U.S. at 679). "The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. at 678.

To survive a motion to dismiss, a claim must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a claim, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679; *Twombly*, 550 U.S. at 555-56.

**b.    THE SURETYSHIP TRIPARTE RELATIONSHIP**

As set forth below, it is clear that Defendant's Counterclaim cannot stand, but before digging into the reasons which necessitate its dismissal, it is important to keep at center focus the very agreement that this litigation stems from: the Indemnity Agreement. The evaluation, analysis and application of the Indemnity Agreement in light of the Defendant's Counterclaim is also critical. While the federal district case law on suretyship and the enforcement of sureties' indemnity agreements is rather limited in Vermont,[2] although certainly not a matter of first

---

[2] It is a common theme throughout this Motion that the case law of other jurisdictions is most helpful in addressing the relevant issues set forth herein, as it appears Vermont federal courts have not recorded an abundance of decisions addressing these specific issues, at this procedural posture, in the context of suretyship and interpreting and applying indemnity agreements. However, decisions from across the country, as well as those from sister courts in this judicial circuit have often had the opportunity to examine, and reject, similar claims by indemnitors and therefore can provide guidance.

3

impression, surrounding jurisdictions have evaluated those concepts in great depth. By way of background on suretyship, "[a] suretyship is a tripartite relationship, where the surety undertakes to perform a contract to the obligee, if the principal fails to do so." *Arch Ins. Co. v. Centerplan Constr. Co., LLC,* 855 F. App'x 11, 18 (2d Cir. 2021) (The district court awarded summary judgment on the surety's motion for summary judgment on its contractual indemnification claim, and the Second Circuit affirmed). A contract of suretyship is unique "whereby one person engages to be answerable for the debt, default or miscarriage of another." *Black's Law Dictionary* 1156, 1442 (6th ed. 1991). That surety relationship is founded on the principal, and indemnitors of the principal, providing a surety with an indemnity agreement, as surety bonds are not insurance, and sureties expect and anticipate reimbursement for any losses from their indemnitors when issuing bonds. In these incredibly distinctive situations, "careful evaluation of the text of the Indemnity Agreements," is key. *Arch Ins. Co.,* 855 F. App'x at 18.

Thus, we bear these principles and the importance of the Indemnity Agreement in mind throughout this case.

### c. DEFENDANT'S COUNTERCLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED WITH PREJUDICE

#### i. The Duty of Good Faith and Fair Dealing Cannot Override a Contract's Express Terms

"A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself . . . and implies unfair dealing rather than mistaken judgment." *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.,* 2012 WL 5928139, at *6 (S.D. Cal. Nov. 26, 2012) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal.App.3d 1371, 1394 (1990)). However, "[t]he implied duty of good faith does not have any fixed substantive content . . . Instead, it is essentially a gap-filling doctrine that facilitates 'enforcement

of the contract terms in a manner that is consistent with the parties' reasonable expectations."
*Hartford Fire Ins. Co. v. E.R. Stuebner, Inc.*, 2022 WL 245237, at *3 (E.D. Pa. Jan. 25, 2022)
(quoting *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. Ct. 2005)) (emphasis added).
"[T]he duty of good faith cannot override a contract's express terms, but instead must take its
meaning *from* a contract's express terms." 2022 WL 245237 at *3 (citing *Agrecycle, Inc. v. City of
Pittsburgh*, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001)) (emphasis added).

 "Accordingly, 'the implied covenant will only be recognized to further the contract's
purpose; it will not be read into a contract to prohibit a party from doing that which is expressly
permitted by the agreement itself.'" *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*,
2012 WL 5928139, at *6 (S.D. Cal. Nov. 26, 2012) (quoting *Wolf v. Walt Disney Pictures &
Television* 162 Cal.App.4th 1107, 1120 (2008)) (emphasis added) (granting judgment for the
surety because "the implied covenant conflicts with the parties' explicit [indemnity] agreement"
and "the Court will not rewrite the parties' contract after to fact to facilitate a difference result.");
*see also Hartford Fire Ins. Co.,* 2022 WL 245237 at *3 (citing *Agrecycle, Inc. v. City of Pittsburgh*,
783 A.2d 863, 867 (Pa. Commw. Ct. 2001)) (granting the surety's motion to dismiss because the
implied duty of good faith cannot "defeat a party's express contractual rights.").[3] These

---

[3] Jurisdictions across the nation overwhelmingly uphold this very principle. *See, e.g.*, *Cohen v.
Wrapsol Acquisition, LLC*, 177 F. Supp. 3d 1373, 1378 (D. Utah 2016) (citations omitted) ("The
implied covenant cannot create rights and duties inconsistent with express contractual terms or
compel a contractual party to exercise a contractual right to its own detriment for the purpose of
benefitting another party to the contract . . . A party cannot rewrite the terms of the contract to
make it more favorable, using the implied covenant."); *Hartford Accident & Indem. Co. v. Lin*, 97
F.4th 500, 510 (7th Cir. 2024) (". . . the implied covenant of good faith and fair dealing . . . does
not allow parties to add terms to a contract that are not there . . . we cannot use this doctrine to
rewrite the parties' contract to impose obligations that the parties did not agree to."); *United States
v. Basin Elec. Power Co-op.,* 248 F.3d 781, 797 (8th Cir. 2001) ("Thus, where a contract gives
broad discretion to set prices to one of the parties, the court held it was inappropriate to use the
implied covenant to, in effect, rewrite the bargained-for terms of the contract by limiting the price-
setting party's discretion.").

aforementioned cases looked at strikingly similar scenarios to those that we are presented with in the above-captioned litigation, including the discussion of sureties acting within their discretion and authority as permitted by indemnity agreements. In these nearly identical situations, the courts dismissed the defendants' counterclaims therein, routinely rejecting the indemnitors' use of the implied covenant of good faith and fair dealing to rewrite a contract.

Here, Defendant alleges that Merchants breached the implied duty of good faith by "failing to diligently prosecute its assigned rights to collect all amounts properly due on the bonded contracts." Counterclaim, p. 15.[4] But this allegation does not support a plausible claim for breach of the implied duty of good faith because Defendant expressly, by way of the Indemnity Agreement, gave Merchants the exclusive right to decide and determine how claims or demands against Merchants' bonds shall be resolved. The Indemnity Agreement provides:

> SECOND . . . [Merchants] shall have the *exclusive right* for itself and for the Undersigned *to decide and determine* whether any claim, demand, suit or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended of appealed, and [Merchants'] determination shall be final, conclusive and binding upon the Undersigned.

> SIXTH: The Undersigned does hereby assign, transfer, and convey to [Merchants] . . . for [Merchants'] protection and use . . . all monies due or to become due to the Undersigned arising out of or in any way related to any bonded contract or to any other contract, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof. The Undersigned hereby *authorize* [Merchants] to prosecute, settle, compromise, waive or release any said assigned rights in the name of [Merchants] . . . and to collect any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights.

Exhibit A, pp. 2-3 (emphasis added). Pursuant to the Indemnity Agreement, Defendant intentionally, knowingly, and willingly gave Merchants the *authority* and *sole discretion* to make

---

[4] Defendant makes three other allegations as to the "bad faith" committed by Merchants, however, these three allegations are not tied to specific provisions of the Indemnity Agreement, as set forth in more detail below, and therefore cannot be written into the Contract as required duties.

decisions about which claims, demands, and rights to prosecute and/or act upon, including which claims and payments to collect upon. In authorizing Merchants to do so, Defendant voluntarily gave Merchants the right to make decisions on behalf of Defendant (and the iSun Entities). The entirety of the Indemnity Agreement makes explicit that it was Defendant's intention to grant Merchants this discretionary power, across all associated bonded contracts, to make decisions and to act on behalf of the Defendant.[5] Tellingly, Defendant does not dispute that he signed the Indemnity Agreement giving Merchants those rights.

Furthermore, the Indemnity Agreement provides that Defendant "irrevocably nominate[d] and appoint[ed] [Merchants] as the true and lawful attorney-in-fact of the Undersigned." Exhibit A, p. 3. In so doing, Defendant agreed to "hold harmless [Merchants] and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments" contained in the Indemnity Agreement. *Id.* Yet again, the language of the Indemnity Agreement so strongly conveys the *discretion* and *control* given to Merchants, and this is combined with the fact that Defendant agreed to hold Merchants harmless for any such costs and expenses that arose from those grants and assignment of authority.[6] The Court cannot rewrite the Indemnity Agreement to take away this unambiguous grant of authority.

---

[5] In the Fifth Paragraph of the Indemnity Agreement, Defendant also agreed that Merchants "shall have the right, at its option and in its sole discretion, to take possession of the work under any and all contracts guaranteed by the Bond whenever, in its sole opinion, such action is desirable or necessary . . . ." Exhibit A, p. 2 (emphasis added). This is yet another example of the Indemnity Agreement expressly articulating that Merchants had sole discretion and authority to make decisions on behalf of Defendant.

[6] Defendant even agreed in the Second Paragraph of the Indemnity Agreement that "[v]ouchers, affidavits or other evidence of payment by [Merchants] of any loss, cost or expense shall be *prima facie* evidence of their propriety and the liability of [Defendant] to [Merchants] for such loss, cost or expense." (emphasis added).

Thus, Defendant has failed to plead facts to state a claim for relief that is plausible on its face, and rather, makes highly conclusory statements in its Counterclaim, attempting to fault Merchants for good faith exercise of its *contractually given* authority and discretion. Accordingly, because the Court will not rewrite the parties' contract after the fact to facilitate a different result, Defendant's claim for breach of the implied covenant conflicts with the parties' explicit Indemnity Agreement expressly authorizing the actions taken by Merchants. Defendant's Counterclaim should therefore be dismissed with prejudice.

   ii. <u>The Remaining Three of The Four Allegations Defendant Makes in Count One, are not Tied to Any Provision of the Indemnity Agreement</u>

In furtherance of the principles set forth above, "[m]ost courts [also] decline to find a breach of the covenant apart from a breach of an express contract term . . . the claim [that the covenant has been breached] must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty." *Chapman v. Priceline Grp., Inc.,* 2017 WL 4366716 at *5 (D. Conn. Sept. 30, 2017) (citing *Landry v. Spitz,* 102 Conn. App. 34, 47, 925 A.2d 334, 344 (2007)) (quoting 23 Samuel Williston, Contracts § 63:22 (4th ed. 2002)).

Defendant's Count One, in addition to the allegation detailed above, alleges: (1) Merchants failed to "mitigate its damages"; (2) Merchants interfered with the Larson Contract; and (3) Merchants failed to "properly account to Peck." Def. Countercl. pp. 15-16. However, Defendant has not even attempted to tie these conclusory allegations contained in Count One of the Counterclaim to specific terms of the Indemnity Agreement which could give rise to a breach of contract claim or a breach of the implied covenant claim arising out of Merchants' alleged failures; and in fact, no such terms exist in the Indemnity Agreement. The Defendant cannot prevail on his

alleged claim for breach of the implied duty of good faith and fair dealing without tying these allegations to specific terms of the Indemnity Agreement. Accordingly, Defendant's Counterclaim should be dismissed with prejudice in its entirety.

iii.      <u>Defendant Fails to Plead Sufficient Facts to State a Claim that Merchants Breached Its Contractual Duty to Act in Good Faith.</u>

Defendant's Counterclaim still must fail, as Defendant fails to allege facts sounding in bad faith to maintain that cause of action. To state a claim for breach of the implied covenant of good faith and fair dealing, there must be a breach of an "implied-in-law promise not to do anything to undermine or destroy [the Defendant's] rights to receive the benefit of the parties' . . . agreement." *Post v. Killington, Ltd.,* 2010 WL 3323659, at *15 (D. Vt. May 17, 2010), *aff'd,* 424 F. App'x 27 (2d Cir. 2011) (quoting *R&G Properties, Inc. v. Column Fin., Inc.,* 184 Vt. 494, 514 (2008)) (quotations omitted). "The covenant . . . protects against conduct [that] violates community standards of decency, fairness or reasonableness." *Post*, 2010 WL 3323659 at *15 (quoting *R&G Properties, Inc.,* 184 Vt. at 514) (quotations omitted).

While "the implied covenant of good faith and fair dealing applies to a surety that is party to an indemnity agreement," *see PSE Consulting Inc. v. Mercede & Cons, Inc.*, 267 Conn. 279, 301 (2004), "[t]o constitute a breach of that covenant, the acts by which a [surety] allegedly impedes the [indemnitor's] right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Arch Ins. Co. v. Centerplan Constr. Co., LLC,* 2018 WL 6519063, at *13 (D. Conn. Dec. 11, 2018) (citing *Alexandru v. Strong*, 81 Conn. App. 68, 80–81 (Conn. App. Ct. 2004)) (dismissing an indemnitor's cause of action for implied covenant of good faith and fair dealing because the indemnitor did not allege facts that suggested the surety acted to "evade some contractual or legal obligation or that some other improper motive animated the surety's decisions."). Simply "[s]lapping on the bad faith label without providing

9

facts that could support such a finding does not meet the federal pleading standard." *Id*. While Vermont has not yet issued any reported decisions on this issue, its sister circuit jurisdictions make clear that a successfully pled claim for breach of the covenant of good faith and fair dealing sounds in bad faith.

In examining bad faith in the surety relationship, other courts have found it to be something egregious: "[i]n the surety context, 'bad faith' is defined as an 'improper motive' or 'dishonest purpose' on the part of the surety." 2018 WL 6519063, at *13 (quoting *PSE*, 267 Conn. at 304–05) (emphasis added). "[A] lack of diligence or negligence is not the equivalent of bad faith, indeed even gross negligence cannot support a finding of bad faith." *Arch Ins. Co. v. Kriger Constr., Inc*., 2024 WL 1693989, at *2 (E.D. Pa. Mar. 26, 2024) (citations omitted) (granting the surety's motion to dismiss where the indemnitors failed to plead any facts that show a plausible finding that the surety breached a duty of good faith and fair dealing). Nor do payments made to reduce a surety's bonded obligations rise to the level of bad faith. *See U.S. Fid. & Guar. Co. v. Feibus*, 15 F.Supp.2d 579, 587 (M.D. Pa. 1998), *aff'd,* 185 F.3d 864 (3d Cir. 1999) (granting summary judgment on the surety's first claim for reimbursement of losses and expenses because a surety is entitled to reimbursement for claims paid in good faith).[7] Thus, as the case law details, the bar for classifying a surety's action as having been taken in bad faith is high, and Defendant's allegations as pled do not meet that bar.

Defendant does not allege any facts that suggest Merchants acted in such a way in order to evade contractual or legal obligations or that some other improper motive drove Merchants'

---

[7] *See also American States Ins. Co. v. Glover,* 1992 WL 78786 *4 (6th Cir.1992) (per curiam) (holding that a surety's failure to mitigate losses is not a defense to an indemnity action, and in so holding, the court affirmed the District Court's grant of the surety's directed verdict requiring the defendant to reimburse the surety pursuant to the parties' indemnity agreement).

decisions. Rather, the bare allegations set forth in Defendant's counterclaim are merely conclusory statements and insufficient as a matter of law to state a claim against Merchants. In fact, many of Defendant's allegations are directed at BNRG, owner of the Larson Project, and do not describe actions Merchants took. Thus, Defendant's Counterclaim does not contain one single fact that supports an allegation that Merchants acted with a dishonest purpose or motive.

Accordingly, Defendant's failure to allege facts supporting a finding of improper motive or dishonest purpose for Merchants' payment and performance of Merchants' bonded obligations is fatal, and consequently, Defendant's Counterclaim should be dismissed with prejudice.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. respectfully request that the Court grant their Motion to Dismiss and dismiss Defendant's Counterclaim in its entirety, with prejudice, and grant such other and further relief this Court deems just.

Merchants hereby requests oral argument on this Motion to Dismiss, pursuant to L.R 7(a).

**[Signature on following page]**

DATE: October 21, 2024                    Respectfully submitted,

**MERCHANTS BONDING COMPANY**
**(MUTUAL) AND MERCHANTS NATIONAL**
**BONDING, INC.**

By Counsel:

*/s/ Lisa B. Shelkrot, Esq.*
Erin M. Heins, Esq.
Lisa B. Shelkrot, Esq.
LANGROCK SPERRY & WOOL
210 College Street, Suite 400
Burlington, Vermont 05402
Telephone: (802) 864.0217
Facsimile: (802) 864.0137
eheins@langrock.com
lshelkrot@langrock.com


*/s/ Lauren P. McLaughlin, Esq.*
Lauren P. McLaughlin, Esq. (admitted *pro hac vice*)
Ashley P. Cullinan, Esq. (admitted *pro hac vice*)
SMITH CURRIE OLES LLP
1921 Gallows Road, Suite 850
Tysons, Virginia 22182
Telephone: (703) 506.1990
Facsimile: (703) 506.1140
lpmclaughlin@smithcurrie.com
apcullinan@smithcurrie.com